CORRIGAN, J.
In this case, we consider whether the trial court failed to follow the three-step process of Batson v Kentucky, 476 US 79; 106 S Ct 1712; 90 L Ed 2d 69 (1986), when it prohibited defendant from exercising his right to two peremptory challenges and, if so, whether that error is structural and, thus, requires automatic reversal. In Batson, the United States Supreme Court held that a peremptory challenge to strike a juror may not be exercised on the basis of race. Id. at 89, 96-98. The Court set forth a three-step process for determining whether a challenger has improperly exercised peremptory challenges. First, the opponent of the challenge must make a prima facie showing of discrimination based on race. Id. at 94-97. Next, once the prima facie showing is made, the burden then shifts to the challenging party to come forward with a neutral explanation for the challenge. Id. at 97. Finally, the trial *279 court must decide whether the opponent of the challenge has proven purposeful discrimination. Id. at 100.
In this case, a prima facie showing was made that two of defendant’s peremptory challenges were based on race. The trial court initially erred in failing to allow defendant to provide race-neutral reasons for the challenges. The trial court subsequently cured this error by allowing defendant to provide reasons for the challenges. Defendant’s reasons were race-conscious rather than race-neutral. Accordingly, the trial court disallowed the challenges. Because the trial court’s initial error was subsequently cured and because defendant’s reasons were race-conscious, we conclude that the trial court did not fail to follow the three-step Batson procedure and did not err in disallowing the challenges in question. We further conclude that the trial judge’s initial error does not require automatic reversal. We thus reverse the judgment of the Court of Appeals.
I. UNDERLYING FACTS AND PROCEDURAL HISTORY
On July 29, 1999, defendant was involved in the robbery and shooting deaths of Chanel Roberts and Amanda Hodges. Following a jury trial, defendant was convicted of two counts of first-degree felony murder, MCL 750.316; two counts of armed robbery, MCL 750.529; and one count of conspiracy to commit armed robbery, MCL 750.529 and MCL 750.157a. Defendant was sentenced to concurrent terms of mandatory life imprisonment without parole for the first-degree felony murder convictions and life imprisonment for the armed robbery and conspiracy to commit armed robbery convictions.
Defendant is African-American and the two victims were Caucasian. During jury selection, defense counsel attempted to exercise a peremptory challenge to strike potential juror number ten, who is Caucasian. Juror ten *280 stated during voir dire that three of his friends were high-ranking police officers, but that he “wouldn’t think” that this fact would affect his ability to be fair and impartial. When defense counsel attempted to excuse this juror peremptorily, the trial court disallowed the challenge, concluding that counsel had exercised the challenge on the basis of race. The trial court initially refused to allow defense counsel to make a record, but reconsidered after defense counsel expressed dissatisfaction with the trial court’s refusal. Defense counsel then furnished a race-conscious, rather than race-neutral, reason for the challenge and the trial court continued to disallow the challenge.
Jury selection continued. After several more defense peremptory challenges, the prosecutor objected when defense counsel attempted to excuse juror number five. The prosecutor claimed that defense counsel was attempting to strike juror five on the basis of race, contrary to Batson. The trial court excused the jury in order to make a record regarding the challenge. The prosecutor noted that the current challenge was defense counsel’s third consecutive strike on a Caucasian male and that defense counsel was attempting to exclude Caucasian males from the jury. Defense counsel replied that the prosecution’s argument would have some merit if no other Caucasian males remained on the jury. Defense counsel also noted that the majority of the remaining jurors was Caucasian. Defense counsel offered no other explanation for his challenge. The trial court found defense counsel’s explanation race-conscious and disallowed the challenge. Consequently, both jurors five and ten sat on the jury that convicted defendant.
On appeal, defendant raised several claims of error, including the claim that the trial court failed to follow *281 the three-step procedure mandated in Batson in disallowing his peremptory challenges of jurors five and ten. The Court of Appeals, in a split decision, agreed that the trial court failed to follow the Batson procedure, but, nevertheless, upheld defendant’s convictions.[1] Judges ZAHRA and WILDER concluded that the trial court’s Batson error was not of constitutional dimension and was subject to harmless error analysis, while Judge FITZGERALD would have held that the error was structural and required automatic reversal.
Defendant sought reconsideration. The Court of Appeals granted defendant’s motion and vacated its prior opinion.[2] On reconsideration, the Court held that a denial of the statutory right to a peremptory challenge is error per se.[3] Judges ZAHRA and WILDER concurred, stating that they were “duty-bound” to follow the holdings in People v Miller, 411 Mich 321; 307 NW2d 335 (1981), and People v Schmitz, 231 Mich App 521; 586 NW2d 766 (1998).
The prosecutor applied for leave to appeal, contending that the alleged denial of defendant’s statutory right to remove prospective jurors peremptorily was not error requiring automatic reversal.
We granted the prosecution’s application for leave to appeal.[4] The prosecution contends that the trial court did not err in failing to follow the procedures set forth in Batson. Alternatively, the prosecution argues that even if the trial court erred in failing to follow the Batson procedures, the error was harmless.
*282 Defendant argues that the trial court denied him his right to exercise two peremptory challenges by arbitrarily disallowing the challenges without following the mandated Batson procedures. Defendant further argues that the denial of this right requires automatic reversal.
II. STANDARD OF REVIEW
This case requires us to determine whether the trial court failed to follow the procedures set forth in Batson in disallowing two of defendant’s peremptory challenges. We review de novo issues regarding a trial court’s proper application of the law. People v Goldston, 470 Mich 523, 528; 682 NW2d 479 (2004). We review for clear error a trial court’s decision on the ultimate question of discriminatory intent under Batson. Hernandez v New York, 500 US 352, 364-365; 111 S Ct 1859; 114 L Ed 2d 395 (1991); United States v Hill, 146 F3d 337, 341 (CA 6, 1998).
III. ANALYSIS
A. BATSON RULE
In Batson, the United States Supreme Court made it clear that a peremptory challenge to strike a juror may not be exercised on the basis of race. Batson, supra at 89, 96-98. The prosecution in Batson attempted to exclude African-American jurors solely on the basis of their race. Id. at 82-83. The Court determined that the prosecution’s actions violated the Equal Protection Clause. It set forth a three-step process for determining an improper exercise of peremptory challenges. First, there must be a prima facie showing of discrimination based on race. Id. at 94-97. To establish a prima facie case of discrimination based on race, the opponent of the challenge must show that: (1) the defendant is a *283 member of a cognizable racial group; (2) peremptory challenges are being exercised to exclude members of a certain racial group from the jury pool; and (3) the circumstances raise an inference that the exclusion was based on race. Id. at 96. The Batson Court directed trial courts to consider all relevant circumstances in deciding whether a prima facie showing has been made. Id.
Once the opponent of the challenge makes a prima facie showing, the burden shifts to the challenging party to come forward with a neutral explanation for the challenge. Id. at 97. The neutral explanation must be related to the particular case being tried and must provide more than a general assertion in order to rebut the prima facie showing. Id. at 97-98. If the challenging parly fails to come forward with a neutral explanation, the challenge will be denied. Id. at 100.
Finally, the trial court must decide whether the non-challenging party has carried the burden of estabhshing purposeful discrimination. Id. at 98. Since Batson, the Supreme Court has commented that the establishment of purposeful discrimination “comes down to whether the trial court finds the ... race-neutral explanations to be credible.” Miller-El v Cockrell, 537 US 322, 339; 123 S Ct 1029; 154 L Ed 2d 931 (2003). The Court further stated, “Credibility can be measured by, among other factors, the ... [challenger’s] demeanor; by how reasonable, or how improbable, the explanations are; and by whether the proffered rationale has some basis in accepted trial strategy.” Id. at 339. If the trial court finds that the reasons proffered were a pretext, the peremptory challenge will be denied. Batson, supra at 100.
B. APPLICATION OF BATSON TO THE FACTS IN THIS CASE
In Michigan, the right to exercise a peremptory challenge is provided by court rule and statute. Accord *284 ing to MCR 6.412(E)(1), a defendant is entitled to five peremptory challenges unless an offense charged is punishable by life imprisonment, in which case a defendant being tried alone is entitled to twelve peremptory challenges. Further, under MCL 768.13, “[a]ny person who is put on trial for an offense punishable by death or imprisonment for life, shall be allowed to challenge peremptorily twenty of the persons drawn to serve as jurors, and no more . . . ,”[5]
The trial court followed the court rule, which entitled defendant to twelve peremptory challenges because he was on trial for an offense punishable by life imprisonment. Defendant claims that the trial court violated his right to two of the peremptory challenges by failing to follow the three-step procedure mandated in Batson in disallowing the challenges.
Applying the above rules to the facts in this case, we conclude that no such error occurred.[6]
1. PRIMA FACIE SHOWING OF DISCRIMINATION BASED ON RACE
Here, defense counsel had already exercised several peremptory challenges and was attempting to challenge juror ten when the trial court interrupted and requested that counsel for both parties proceed to chambers. While in chambers, the trial court stated that it was going to disallow the challenge because defense *285 counsel had based his challenges on the race of the juror. The trial court reached this conclusion because defense counsel had established a pattern of excusing Caucasian males.[7]
After defense counsel’s peremptory challenge of juror five, the prosecution objected, reasoning that juror five was Caucasian and the two previous challenges by defense counsel were of Caucasian males. The trial court agreed and disallowed the challenge.
On appeal, defendant argued that the trial court erred by raising Batson sua sponte to question defense counsel’s reasons for peremptorily challenging juror number ten. Defendant further maintained that neither the trial court nor the prosecution established a prima facie showing of discrimination based on race for either challenge.
The Court of Appeals held that a trial court may raise a Batson issue sua sponte, noting that virtually all state courts have concluded that a trial court may raise a Batson issue sua sponte. The Court of Appeals, however, concluded that because the record did not reveal the racial identities of the prospective jurors, it could not determine whether a prima facie case of discrimination had been established.
We have not previously addressed the question whether a trial court may raise a Batson issue sua sponte. The rationale underlying Batson and its progeny, however, supports the Court of Appeals position that the trial court may make an inquiry sua sponte after observing a prima facie case of purposeful discrimination through the use of peremptory challenges. *286 Batson and its progeny[8] make clear that a trial court has the authority to raise sua sponte such an issue to ensure the equal protection rights of individual jurors. See Batson, supra at 99 (“In view of the heterogeneous population of our Nation, public respect for our criminal justice system and the rule of law will be strengthened if we ensure that no citizen is disqualified from jury service because of his race.”); Georgia v McCollum, 505 US 42,49-50; 112 S Ct 2348; 120 L Ed 2d 33 (1992), quoting State v Alvarado, 221 NJ Super 324, 328; 534 A2d 440 (1987) (“ ‘Be it at the hands of the State or the defense,’ if a court allows jurors to be excluded because of group bias, ‘[it] is [a] willing participant in a scheme that could only undermine the very foundation of our system of justice — our citizens’ confidence in it.’ ”).
The United States Supreme Court, in Powers v Ohio, 499 US 400, 416; 111 S Ct 1364; 113 L Ed 2d 411 (1991), held that a criminal defendant has standing to object to a prosecutor’s peremptory challenges. It reasoned:
The barriers to a suit by an excluded juror are daunting. Potential jurors are not parties to the jury selection process and have no opportunity to be heard at the time of their exclusion. Nor can excluded jurors easily obtain declaratory or injunctive relief when discrimination occurs through an individual prosecutor’s exercise of peremptory challenges. Unlike a challenge to systematic practices of the jury clerk and commissioners such as we considered in Carter [v Jury Comm of Greene Co, 396 US 320; 90 S Ct 518; 24 L Ed 2d 549 (1970)], it would be difficult for an individual juror to show a likelihood that discrimination *287 against him at the voir dire stage will recur. And, there exist considerable practical barriers to suit by the excluded juror because of the small financial stake involved and the economic burdens of litigation. The reality is that a juror dismissed because of race probably will leave the courtroom possessing little incentive to set in motion the arduous process needed to vindicate his own rights. [Id. at 414-415 (citations omitted).]
The Powers Court further stated:
The statutory prohibition on discrimination in the selection of jurors, enacted pursuant to the Fourteenth Amendment’s Enabling Clause, makes race neutrality in jury selection a visible, and inevitable, measure of the judicial system’s own commitment to the commands of the Constitution. The courts are under an affirmative duty to enforce the strong statutory and constitutional policies embodied in that prohibition. [Id. at 416 (citation omitted).]
The Supreme Court’s rationale for allowing a defendant to raise a Batson issue supports our conclusion that a trial court may sua sponte raise a Batson issue. Trial courts are in the best position to enforce the statutory and constitutional policies prohibiting racial discrimination. Further, wrongly excluded jurors have little incentive to vindicate their own rights. We thus conclude, for the foregoing reasons, that a trial court may sua sponte raise a Batson issue.
We reject the Court of Appeals assertion that it could not establish whether a prima facie case of discrimination had been made regarding the challenges because of the inadequacy of the record. It is undisputed that defendant is an African-American male. While the challenged jurors were not of defendant’s racial group, it is equally harmful to challenge only members outside a defendant’s racial group. Powers, supra at 415-416. The trial court specifically stated that it was disallowing the *288 challenges because defense counsel, for the better part of the day, had only excused Caucasian male jurors.[9] Defense counsel did not dispute that he had only excused Caucasian males. Instead, he pointed to the racial make-up of the remaining jurors to justify his challenges.
The trial court rejected defense counsel’s challenge of juror ten because defense counsel had exercised seven of nine peremptory challenges against Caucasian males. The prosecution objected to defense counsel’s challenge of juror five because defense counsel consecutively excused three Caucasian male jurors. In both instances, defense counsel’s challenges created a pattern of strikes against Caucasian males. This pattern was sufficient to raise an inference that defense counsel was indeed excluding potential jurors on the basis of their race. See Batson, supra at 97 (a pattern of strikes against jurors of a specific race may give rise to an inference of discrimination). We thus conclude that the Court of Appeals erred in failing to find a prima facie showing of discrimination based on race.
2. NEUTRAL EXPLANATION FOR THE CHALLENGE
Once a prima facie showing is made, the burden shifts to the challenger to provide a neutral explanation for the challenge. Upon the trial court’s finding that defense counsel’s challenge of juror ten was based on race, defense counsel requested an opportunity to make a record. The trial court initially denied defense counsel’s request, but reconsidered upon defense counsel’s objection. Defense counsel stated:
*289 I would bring to the Court’s attention that the number of white males on that panel still exceeds the number of the minorities on that panel. Why don’t you talk about the whole racial composition of that panel? There’s still a vast majority of white members on that panel than it is [sic] black members on that panel.
The trial court responded by stating that defense counsel’s reason supported its prima facie finding that counsel had exercised the challenge on the basis of race and upheld its disallowance of the challenge.
After the prosecutor objected to defense counsel’s peremptory challenge of juror five, the trial court disallowed the challenge “for the same reasons as asserted before.” Defense counsel objected and attempted to make a record, but the trial court interrupted him. The trial court then allowed defense counsel to make a record, but only after the prosecutor asked to approach the bench. The prosecutor stated that defense counsel’s three previous peremptory challenges, including juror five, were of Caucasian males. Defense counsel responded by giving race-neutral reasons for two of the challenges. The trial court noted that it was only concerned with defense counsel’s reasons for challenging juror five. Defense counsel replied:
Judge, again, if there were no other white males on that jury, or white males were a minority on that jury, then there may be some persuasive force to [the assistant prosecutor’s] argument about a Battson [sic] challenge.
That simply is not the case. The demographics of that jury do not hold up to that kind of a challenge.
And I think I don’t have to have a reason for exercising a peremptory challenge.
Defense counsel gave no other reason for his challenge. The trial court stated that peremptory challenges *290 could not be based on race and found that defense counsel’s peremptory challenge of juror five had been based on gender and race.
The Court of Appeals concluded that even if a prima facie case had been established, the trial court failed to comply with steps two and three of the Batson process. It found that the trial court erred by denying defense counsel the opportunity to make a record before disallowing the peremptory challenge of juror ten. It further found that the trial court failed to inquire whether defense counsel had a race-neutral reason for striking juror five.
We agree that the trial court initially erred in denying defense counsel the opportunity to provide race-neutral reasons for his challenges. We conclude, however, that these errors were cured when the trial court, almost immediately after each challenge, permitted defense counsel to make a record. It then based its ultimate conclusion to disallow the challenges on defendant’s race-conscious reasons. Because the trial court did perform the steps required by Batson, albeit somewhat belatedly, it did not improperly deny defendant the right to exercise two of his statutorily prescribed peremptory challenges.
We reject the claim that the trial court failed to inquire whether defense counsel had a race-neutral reason for striking juror five because the record shows otherwise. Defense counsel provided only one reason for his challenges, which was not race-neutral and did not refute the prima facie showing that his challenges were based on race. Just as a challenger may not exclude a prospective juror on the basis of race, it is equally improper for a challenger to engineer the composition of a jury to reflect the race of the defendant.
*291 Finally, defendant claims on appeal that his responses were not given as race-neutral reasons for his challenges, but, rather, as attempts to disprove the trial court’s and the prosecution’s prima facie showings of racial discrimination. We are not persuaded by this argument. Defense counsel never contended that the trial court and the prosecution had not made a prima facie case of racial discrimination. If he was merely attempting to disprove the prima facie showings, defense counsel would not have stopped there, but would have also provided race-neutral reasons for the challenges in the event that the trial court refused to accept his argument. Additionally, the record indicates that defense counsel understood that he was to provide race-neutral reasons. The prosecution objected to the challenge of juror five because defense counsel’s three previous peremptory challenges, including juror five, were of Caucasian males. Defense counsel then furnished race-neutral reasons for two of the challenges. But with respect to juror five, defense counsel merely stated that the prosecution’s argument failed because Caucasian males still remained on the jury. Defendant clearly demonstrated his understanding and ability to provide race-neutral reasons when needed. In juror five’s case, he failed to do so.[10] While defense counsel may not have effectively used his opportunity to provide *292 race-neutral reasons for his challenges, he .had the opportunity. Defendant cannot complain now that the opportunity was insufficient.
3. TRIAL COURT’S DECISION REGARDING PURPOSEFUL DISCRIMINATION
Finally, the trial court must determine whether the opponent of the challenge has carried the burden of establishing purposeful discrimination. This decision may hinge on the credibility of the challenger’s race-neutral explanations, but only if the challenger provided race-neutral explanations. Here, defense counsel provided race-conscious, rather than race-neutral, reasons for his challenges. This reinforces the prima facie showings that the challenges were based on race. Consequently, the trial court did not clearly err in finding purposeful discrimination.
IV STANDARD OF REVIEW FOR DENIALS OF PEREMPTORY CHALLENGES
In light of our conclusion that the trial court’s initial *293 error was cured, we need not address whether a denial of a peremptory challenge is subject to automatic reversal. Had we concluded, however, as do our dissenting colleagues, that defendant’s peremptory challenges had been improperly denied, we would have applied a harmless error standard to the error, because People v Miller, 411 Mich 321; 307 NW2d 335 (1981), and People v Schmitz, 231 Mich App 521; 586 NW2d 766 (1998), are no longer binding, in light of our current harmless error jurisprudence, to the extent that they hold that a violation of the right to a peremptory challenge requires automatic reversal.
We arrive at this conclusion by recognizing the distinction between a Batson error and a denial of a peremptory challenge. A Batson error occurs when a juror is actually dismissed on the basis of race or gender.[11] It is undisputed that this type of error is of constitutional dimension and is subject to automatic reversal.[12] In contrast, a denial of a peremptory challenge on other grounds amounts to the denial of a statutory or court-rule-based right to exclude a certain number of jurors. An improper denial of such a peremptory challenge is not of constitutional dimension.[13]
In Miller, this Court held that “a defendant is entitled to have the jury selected as provided by the rule. Where, as here, a selection procedure is challenged *294 before the process begins, the failure to follow the procedure prescribed in the rule requires reversal.[14] In Schmitz, the Court of Appeals relied on Miller to hold that a denial of a peremptory challenge requires automatic reversal.[15] Following Miller and Schmitz, however, our harmless error jurisprudence has evolved a great deal, as has that of the United States Supreme Court. See People v Carines, 460 Mich 750, 774; 597 NW2d 130 (1999).[16] Under Carines, a nonconstitutional error does not require automatic reversal. Id. Rather, if the error is preserved, it is subject to reversal only for a miscarriage of justice under the Lukity[17] “more probable than not” standard. Id. See also MCL 769.26. If the error is forfeited, it may be reviewed only for plain error affecting substantial rights. Carines, supra.
Because the right to a peremptory challenge in Michigan is not provided by the Michigan Constitution but, rather, by statute and court rule, we conclude, as *295 did the United States Supreme Court, that the right is of non-constitutional dimension.[18] Thus, under our jurisprudence, a violation of the right is reviewed for a miscarriage of justice if the error is preserved and for plain error affecting substantial rights if the error is forfeited.[19]
*296 V RESPONSE TO THE DISSENT ,
Justice Kelly’s dissent asserts that the trial court’s failure to follow the three-step Batson procedures was incurable and requires automatic reversal. She states that the trial court failed to complete a single step of the three-step Batson procedures and collapsed all three steps into one. In reaching this conclusion, Justice KELLY states that the trial court failed to scrutinize carefully whether a prima facie case had been made.
Even if the trial court’s prima facie findings were inadequate, that inadequacy would not be outcome determinative because defendant subsequently offered an explanation for his challenges. Further, the trial court ruled on the ultimate question of intentional discrimination. See Hernandez v New York, 500 US 352, 359; 111 S Ct 1859; 114 L Ed 2d 395 (1991) (“Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot.”); see also Saiz v Ortiz, 392 F3d 1166, 1179 n 8 (CA 10, 2004) (the existence or absence of a prima facie case is moot where the trial court refused to make a finding regarding *297 whether a prima facie case had been established, but proceeded to hear the prosecution’s explanation for the challenge). Justice KELLY states that our reliance on Hernandez is misplaced. She notes that Hernandez observes that a defendant may concede the first Batson step by moving to the second step. We agree and suggest that is exactly what occurred in this case. Both the trial court and the prosecutor objected to defense counsel’s use of peremptory challenges, claiming that he was using them to exclude Caucasian veniremembers. While the trial court did not initially allow defense counsel to provide race-neutral reasons for his challenges, it almost immediately recanted its refusal and allowed defense counsel to provide reasons, which were race-conscious. The trial court ultimately denied defense counsel’s challenges, finding that defense counsel’s race-conscious reasons supported the initial allegations that he had been excluding veniremembers on the basis of race. The trial court’s initial refusal to allow defense counsel to provide race-neutral reasons for his challenges does not amount to a collapsing of the Batson steps. Rather, if anything, it amounted to imperfect compliance with the Batson procedures. The trial court, however, ultimately conducted each Batson step and made a ruling on the basis of defense counsel’s race-conscious reasons. Thus, any error that may have occurred in the trial court’s Batson application was subsequently cured.
Justice KELLY incorrectly assumes that strict adherence to the Batson procedures is constitutionally mandated. To the contrary, the purpose of the Batson test is to ensure adherence to the “principle that the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike.” Purkett v Elem, 514 US 765, 768; 115 S Ct 1769; 131 L *298 Ed 2d 834 (1995).[20] Our research reflects that trial courts have failed to comply perfectly with Batson in the past. See United States v Castorena-Jaime, 285 F3d 916, 929 (CA 10, 2002) (“Notwithstanding the district court’s failure to make express findings on the record [regarding the Batson steps] in the present case, the district court’s ultimate conclusion on discriminatory intent was not clearly erroneous.”); Saiz, supra (the United States Court of Appeals inferred from the record that the trial court did not find a prima facie case of discrimination).[21] Their failure to do so, however, is not error as long as trial courts do not shift the burden of persuasion onto the challenger.
Justice KELLY contends that the trial court, by collapsing the three Batson steps into one, placed the burden on defense counsel to counter the trial court’s finding of purposeful discrimination. The record does not support this contention. Both the trial court and the prosecution made a prima facie showing that defense counsel had excluded jurors on the basis of race. The trial court initially refused to allow defense counsel to provide race-neutral reasons, but almost immediately reconsidered and allowed defense counsel to make a record. Defense counsel gave race-conscious reasons *299 regarding both challenges. Thus, he failed to meet the burden of coming forward with race-neutral explanations. Defense counsel’s proffer of race-conscious reasons did not rebut the trial court’s and the prosecution’s prima facie showings of discrimination. Thus, the trial court neither erred in finding purposeful discrimination nor erred in rejecting defense counsel’s challenges.
Justice KELLY further asserts that our discussion regarding Miller and Schmitz is inappropriate. We recognize that Miller and Schmitz need not be addressed, because we have concluded that the trial court did not err in denying defense counsel’s peremptory challenges. We disagree, however, that our discussion regarding Miller and Schmitz is inappropriate and has no legal value. Rather, such discussion is in direct response to the arguments of the dissent, and without such discussion our response would be incomplete. That a response to a dissent may encompass discussion that is dictum does not render it inappropriate or of no legal value; otherwise, only dissenting opinions would be able to opine upon decisions such as Miller and Schmitz[22] As stated above, in light of our current harmless error jurisprudence, Miller and Schmitz are no longer precedentially binding. We thus disagree with Justice KELLY’s conclusion that our Miller and Schmitz discussion is inappropriate.
VI. CONCLUSION
We hold that the trial court’s initial failure to follow *300 the three-step process set forth in Batson was subsequently cured. Despite our ultimate conclusion that the trial court complied with the requirements of Batson, trial courts are well advised to articulate and thoroughly analyze each of the three steps set forth in Batson, see pp 282-283 of this opinion, in determining whether peremptory challenges were improperly exercised. In doing so, trial courts should clearly state the Batson step that they are addressing and should articulate their findings regarding that step.[23]
We further hold that the trial court did not commit clear error in finding as a matter of fact that defense counsel exercised peremptory challenges on the basis of the race of the prospective jurors. Accordingly, we reverse the judgment of the Court of Appeals.
YOUNG and MARKMAN, JJ., concurred with CORRIGAN, J.

 Unpublished opinion per curiam, issued October 2, 2003 (Docket No. 233234).

 Unpublished order of the Court of Appeals, entered October 30, 2003 (Docket No. 233234).

 People v Bell (On Reconsideration), 259 Mich App 583; 675 NW2d 894 (2003).

 470 Mich 870 (2004).

 MCR 6.412(E) departs from the statute by reducing the number of peremptory challenges to which a defendant is entitled. We need not resolve the discrepancy between the statute and the court rule because this issue is not before us.

 In Georgia v McCollum, 505 US 42, 59; 112 S Ct 2348; 120 L Ed 2d 33 (1992), on remand 262 Ga 554; 422 SE2d 866 (1992), the United States Supreme Court extended the Batson rule to govern the conduct of criminal defendants (“the Constitution prohibits a criminal defendant from engaging in purposeful discrimination on the ground of race in the exercise of peremptory challenges”).

 The challenge to juror ten was defense counsel’s ninth challenge. Of the nine challenges, defense counsel exercised seven against Caucasian males and two against females whose race could not be determined from the record.

 The Court of Appeals correctly noted that the following cases have held that a trial court may raise a Batson issue sua sponte to protect the rights secured by the Equal Protection Clause: State v Evans, 100 Wash App 757, 765-767; 998 P2d 373 (2000); Commonwealth v Carson, 559 Pa 460, 476-479; 741 A2d 686 (1999); Brogden v State, 102 Md App 423, 430-432; 649 A2d 1196 (1994); Lemley v State, 599 So 2d 64, 69 (Ala App, 1992).

 We recognize that the trial court’s statement is not entirely accurate because defense counsel peremptorily challenged two females. We conclude, however, that this fact does not diminish defense counsel’s pattern of peremptorily challenging Caucasian males.

 Defense counsel’s failure to provide race-neutral reasons for his challenges, especially after demonstrating his ability to do so, provide additional support for the inference of discrimination. See Johnson v California,_US_; 125 S Ct 2410; 162 L Ed 2d 129 (2005), in which the United States Supreme Court stated:
In the unlikely hypothetical in which the prosecutor declines to respond to a trial judge’s inquiry regarding his justification for making a strike, the evidence before the judge would consist not only of the original facts from which the prima facie case was established, but also the prosecutor’s refusal to justify his strike in light of the court’s request. Such a refusal would provide addi *292 tional support for the inference of discrimination raised by a defendant’s prima facie case. [Id.,_US_n 6; 125 S Ct 2418 n 6; 162 L Ed 2d 140 n 6.]
Justice Kelly claims that defendant did not provide race-neutral reasons for his challenges because he was never asked for his reasons. The trial transcript, however, indicates that defendant did provide reasons, which the trial court found to be race-conscious. After the prosecutor’s objection to the exclusion of prospective juror five, defense counsel volunteered race-neutral reasons for excluding the two prospective jurors preceding prospective juror five. The trial court then stated, “That’s not an issue. The issue is the last juror.” Defense counsel responded, "Judge, again, if there were no other white males on the jury, or white males were a minority on that jury, then there may be some persuasive force to [the prosecutor’s] argument about a Battson [sic] challenge.” The trial court then indicated, “[b]ut you cannot use a racial basis or a gender basis for excusing jurors.” Defense counsel responded, “And I’ve given my reasons on the record, and. .. none of them were related to race or gender.”

 Batson, supra.

 See Johnson v United States, 520 US 461, 468-469; 117 S Ct 1544; 137 L Ed 2d 718 (1997); J E B v Alabama ex rel T B, 511 US 127, 142 n 13; 114 S Ct 1419; 128 L Ed 2d 89 (1994).

 United States v Martinez-Salazar, 528 US 304, 311; 120 S Ct 774; 145 L Ed 2d 792 (2000); Ross v Oklahoma, 487 US 81, 88; 108 S Ct 2273; 101 L Ed 2d 80 (1988)(the United States Supreme Court recognized that peremptory challenges are not of constitutional dimension and are merely a means to achieve the end of an impartial jury).

 Miller, supra at 326.

 Schmitz, supra at 530-532.

 See, also, Martinez-Salazar, supra at 317 n 4, in which the Supreme Court recognized that the rule of automatic reversal for an erroneous denial of peremptory challenges makes little sense in light of its recent harmless error jurisprudence. It stated:
Relying on language in Swain v Alabama ... Martinez-Salazar urges the Court to adopt a remedy of automatic reversal whenever a defendant’s right to a certain number of peremptory challenges is substantially impaired.... Because we find no impairment, we do not decide in this case what the appropriate remedy for a substantial impairment would be. We note, however, that the oft-quoted language in Swain was not only unnecessary to the decision in that case — because Swain did not address any claim that a defendant had been denied a peremptory challenge — but was founded on a series of our early cases decided long before the adoption of harmless-error review.

 People v Lukity, 460 Mich 484, 495-496; 596 NW2d 607 (1999).

 Although courts in other jurisdictions have reached contrary conclusions, we believe their analyses are unpersuasive. In United States v McFerron, for example, the Sixth Circuit Court of Appeals held that the erroneous denial of a peremptory challenge is a structural error. 163 F3d 952, 956 (CA 6, 1998). But McFerron predated Martinez-Salazar and is therefore of questionable weight.
The Washington Supreme Court also held that the denial of a peremptory challenge in a so-called “reverse-Batson” context is structural error. State v Vreen, 143 Wash 2d 923; 26 P3d 236 (2001). While Vreen acknowledges Martinez-Salazar, the court dismisses that case with a cursory and, in our view, unpersuasive analysis. Indeed, all the cases cited by the Vreen court for its assertion that “the vast majority [of courts] have found harmless error doctrine simply inappropriate in such circumstances” predate Martinez-Salazar. See id. at 929.
We agree with the Court of Appeals for the Seventh Circuit that Martinez-Salazar marked a significant shift in the standard of review applicable to the erroneous denial of a peremptory challenge. United States v Harbin, 250 F3d 532, 546 (CA 7, 2001), citing United States v Patterson, 215 F3d 776 (CA 7, 2000), vacated in part by Patterson v United States, 531 US 1033 (2000). In Harbin, the Seventh Circuit noted that it had been “[fjreed from the Swain language by the Court’s footnote in Martinez-Salazar ____” Harbin, supra at 546 (holding, however, that the prosecution’s mid-trial use of a peremptory challenge was a structural error). United States v Jackson, 2001 US Dist LEXIS 4900, *7 n 1 (SD Ind, 2001) (“The bottom line is that [the] discussion of the need for a dear understanding of the peremptory challenge [in United States v Underwood, 122 F3d 389, 392 (CA 7, 1997)] process remains good law, but the automatic reversal standard is no longer applicable.”).
Given the standard of harmless error review that now prevails in both the United States Supreme Court and this Court, we believe that the erroneous denial of a peremptory challenge is not subject to automatic reversal.

 Justice Kelly inaccurately states that we are departing from the trend set by most other courts that have considered harmless error *296 application to denials of peremptory challenges. We do not depart from that trend, however, because the trend leans toward application of harmless error analysis to improper denials of peremptory challenges.
Justice Kelly further states that we rely on Martinez-Salazar to support our alleged departure. We, however, rely on current Michigan harmless error jurisprudence to support our conclusion that an improper denial of a peremptory challenge is subject to harmless error analysis. We discuss Martinez-Salazar to merely show that the United States Supreme Court’s harmless error jurisprudence is evolving, which strongly indicates that in the federal system nonconstitutional errors, such as an improper denial of peremptory challenges, would he subject to harmless error analysis.

 See, also, Johnson, supra,_US_n 7; 125 S Ct 2418 n 7; 162 L Ed 2d 140 n 7, in which the United States Supreme Court compared the Batson burden-shifting framework to the framework set forth in McDonnell Douglas Corp v Green, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973). The Johnson Court cited St Mary’s Honor Ctr v Hicks, 509 US 502; 113 S Ct 2742; 125 L Ed 2d 407 (1993), for the proposition that the “burden-shifting framework [set forth in Batson and McDonnell Douglas] triggered by a defendant’s prima face case is essentially just ‘a means of “arranging the presentation of evidence.” ’ ” Johnson, supra, _US_ n 7; 125 S Ct 2418 n 7; 162 L Ed 2d 140 n 7, quoting St Mary’s, supra, 509-510, quoting Watson v Fort Worth Bank & Trust, 487 US 977, 986; 108 S Ct 2777; 101 L Ed 2d 827 (1988).

 See, also, United States v Perez, 35 F3d 632, 636 (CA 1, 1994).

 Although the dissent labors hard to avoid referencing Miller and Schmitz, it is puzzling why it would do this with regard to two decisions that are so obviously helpful to its conclusion, except that to reference these decisions would only make obvious the asymmetry of the dissent’s position, namely, that the dissent, but not the majority, should he able to analyze Miller and Schmitz.

 Federal courts have encountered similar problems regarding appellate review of a trial court’s inadequate Batson findings. See Castorena Jaime, supra at 929:
Although we affirm the district court’s ruling, we encourage district courts to make explicit factual findings on the record when ruling on Batson challenges. “Specifically,... a district court should state whether it finds the proffered reason for a challenged strike to be facially race neutral or inherently discriminatory and why it chooses to credit or discredit the given explanation.” A district court’s clearly articulated findings assist our appellate review of the court’s Batson ruling, and “ensureD that the trial court has indeed made the crucial credibility determination that is afforded such great respect on appeal.” [Quoting Perez, supra at 636 (citation omitted).]