# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

MURRAY ARTHUR MULLINS,

      Defendant-Appellant.

UNPUBLISHED
February 18, 2016

No. 324019
Wayne Circuit Court
LC No. 07-009116-FC

Before: GLEICHER, P.J., and JANSEN and SHAPIRO, JJ.

PER CURIAM.

In *Batson v Kentucky*, 476 US 79; 106 S Ct 1712; 90 L Ed 2d 69 (1986), the United States Supreme Court held that the Equal Protection Clause forbids the use of peremptory challenges to exclude members of a jury venire because of their race. An objection to the exercise of a peremptory challenge must be made before the jury is sworn. *People v Knight*, 473 Mich 324, 348; 701 NW2d 715 (2005). In this case, defense counsel warned that she might raise a *Batson* challenge, but she never carried out the threat. And even had she formally objected, her complaint would have come too late; counsel's concern first surfaced only after the jury had taken its oath. Because defendant waived any *Batson* claim and has offered no evidence to suggest that the trial court should have considered the issue on its own, we affirm his convictions and sentences.

I

Defendant stood trial for armed robbery, MCL 750.529, assault with intent to do great bodily harm, MCL 750.84, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. On the first trial day, the court and counsel questioned approximately two dozen potential jurors. The prosecutor exercised seven peremptory challenges and defense counsel used six. Defense counsel raised no objection to any of the prosecutor's strikes. Each peremptorily excused juror was released from the courtroom immediately following the challenge. At the conclusion of the voir dire, defense counsel demurred when asked for additional challenges and the prosecutor expressed satisfaction with the jury. The trial court announced, "We have a jury," thanked the remaining members of the venire, and sent them "back to the first floor."

The court then directed the clerk to swear the jury, and the clerk complied.  After the jury was sworn and had retired to the jury room, the following colloquy occurred:

[*Defense Counsel*]:  Your Honor, I do have an issue before the jury comes back out.

*The Court*:  Okay.

[*Defense Counsel*]:  Real brief.

*The Court*:  Okay.  Yes, what is it?

[*Defense Counsel*]:  Your Honor, in picking the jury it struck me that all the black jurors were being systematically eliminated, so I just wanted the -- that it's for a possible [*Batson*] challenge that could be had at a later date.

*The Court*:  Okay.

[*Defense Counsel*]:  Thank you.

[*Prosecutor*]:  Your Honor, the Court would like a response from the People on that?

*The Court*:  Go ahead, I'm not making a ruling.

[*Defense Counsel*]:  No.

*The Court*:  She's preserving the.  [sic]

[*Prosecutor*]:  I want to state for the record that there's no systematic elimination of those jurors.  Those jurors were removed for reasons such as having a criminal record, having --

*The Court*:  That was a misdemeanor, though.

[*Prosecutor*]:  Well, I couldn't ascertain what it was exactly, just he was involved in the court --

*The Court*:  I don't have any felonies coming out of Rochester, but go ahead.

[*Prosecutor*]:  Additionally, there was a young student had [sic] tickets with the Detroit Police Department.  There was also --

*The Court*:  A record producer.

[*Prosecutor*]:  Hip hop music, had been a shooting victim himself when he was 18.  Those were the reasons that those individuals were struck.  Now there was plenty of other people that I struck as well for the same reasons.  There was

-2-

juror number two. Mr. Roberts was struck for use of marijuana when he was younger, run-ins with the police department and there was a variety of other people that were struck. Ms. Mandujano, her son was accused of murder three years ago. She was struck by me and the People [sic] were removed from the jury using my peremptory challenges for issues in their background, not because of any race in any way.

Neither defense counsel nor the court made any further comment regarding the challenged jurors.

The jury convicted defendant as charged. On appeal, his counsel raises a single argument: that the trial court abused its discretion by "refusing" to rule on defense counsel's *Batson* claim.

II

"The requirement that any *Batson* claim be raised . . . in the period between the selection of the jurors and the administration of their oaths[] is a sensible rule." *Ford v Georgia*, 498 US 411, 422; 111 S Ct 850; 112 L Ed 2d 935 (1991). It is also the rule in Michigan. *Knight*, 473 Mich at 348. A timely objection permits the trial court to determine whether the challenger has established a prima facie case of discrimination, to evaluate the proffered reasons for the strikes and the jurors' demeanor, and to assess the credibility of purportedly race-neutral reasons for excusing a juror. It also allows for the creation of a record that an appellate court can meaningfully review.

Here, defense counsel never actually made even a tardy *Batson* objection. Rather, counsel informed the court that "all the black jurors were being systematically eliminated" as a prelude to "a possible [*Batson*] challenge that could be had at a later date." Counsel evidently decided against making such a challenge. Thus, the trial court had no reason to render a *Batson* ruling, and wisely refrained from doing so despite the prosecutor's utterly unnecessary offer of race-neutral reasons for the strikes.

Accordingly we must reject defendant's argument that the trial court improperly "refused" to rule. No motion was made. No *Batson* objection was articulated. Absent any actual protest about the jury composition in the trial court, the factual predicate for defendant's appellate argument evaporates. The record suggests that defense counsel intentionally relinquished her right to bring even a belated *Batson* motion, extinguishing any error. *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011).

Were we to liberally construe defense counsel's mulling as a motion, we would review the trial court's non-ruling for plain error. But the record includes no evidence that would assist us in this regard, as it is devoid of information relevant to determining whether racial discrimination occurred. And although "a trial court may sua sponte raise a *Batson* issue,"

*People v Bell*, 473 Mich 275, 287; 702 NW2d 128, amended 474 Mich 1201; 704 NW2d 69 (2005), defendant has offered us no reason to think that it should have done so here.

We affirm.

/s/ Elizabeth L. Gleicher
/s/ Kathleen Jansen
/s/ Douglas B. Shapiro