# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

LULA MAE SMITH,

        Defendant-Appellant.

UNPUBLISHED
June 28, 2016

No. 325975
Wayne Circuit Court
LC No. 14-004304-FC

Before: MURPHY, P.J., and SAAD and BORRELLO, JJ.

PER CURIAM.

Defendant appeals as of right her jury trial convictions of second-degree murder, MCL 750.317, felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced, as a fourth habitual offender, MCL 769.12, to 20 to 30 years' imprisonment for her second-degree murder conviction, three to five years' imprisonment for her felon in possession of a firearm conviction, and two years' imprisonment for her felony-firearm conviction. For the reasons set forth in this opinion, we affirm.

## I. FACTS

On April 13, 2013, defendant's nephew, Brandon Smith, brought over dinner for defendant and her husband, Dennis Neubia. Brandon attempted to give the food to defendant, but defendant was asleep on the living room couch. Neubia then took the food from Brandon and threw it on the couch. Brandon told officers that defendant was upset with Neubia because Neubia had been stealing her medication and selling it in exchange for crack cocaine.

Early the next morning, Officer Anthony Byrd of the Detroit Police Department responded to a 911 call at defendant's home. Defendant indicated that she had shot Neubia. Defendant led Byrd to a bedroom in the downstairs flat of the home. Upon entering the bedroom, Byrd observed Neubia lying face down on the floor. When Neubia was turned over, Byrd observed that Neubia had been shot once in the chest.

Two other officers, Cheryl Peoples and Gary Przybyla, spoke with defendant at the scene. When Peoples approached defendant, defendant was upset and asked, "am I going to jail?" Defendant told Przybyla that she was home alone with Neubia at the time of the shooting. As Przybyla was speaking with defendant, Neubia's phone began to ring. Przybyla answered the

-1-

phone and began speaking with defendant's sister, Debra Smith. Debra lived in the upper flat of the home and returned upon speaking with Przybyla. When she arrived, Debra led Przybyla upstairs to her bedroom. Przybyla then searched Debra's room and discovered a .38 caliber revolver hidden underneath the mattress. The revolver had one spent casing and five live bullets. Debra testified that she did not place the weapon there. In a jailhouse phone conversation, defendant told Debra that "it was an accident." During his closing argument, defense counsel argued that the evidence supported a finding that defendant accidentally discharged the firearm while in bed with Neubia. However, counsel did not request an accident instruction.

## II. ANALYSIS

Defendant first argues that there was insufficient evidence to support her second-degree murder and felony-firearm convictions.

We review de novo a challenge to the sufficiency of the evidence. *People v Mayhew*, 236 Mich App 112, 124; 600 NW2d 370 (1999). In reviewing a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could find that all of the essential elements of the crime were proven beyond a reasonable doubt. *People v Johnson*, 460 Mich 720, 723; 597 NW2d 73 (1999).

The elements of second-degree murder are as follows: (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification. *People v Goecke*, 457 Mich 442, 463-464; 579 NW2d 868 (1998). Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm. *Id*. at 464. "The facts and circumstances of a killing may give rise to an inference of malice." *People v Flowers*, 191 Mich App 169, 176; 477 NW2d 473 (1991).

Defendant does not contest that her actions caused the death of Neubia. Rather, defendant contends that she accidentally killed Neubia and that the element of malice was not supported by sufficient evidence. Viewed in a light most favorable to the prosecution, a rational juror could have concluded beyond a reasonable doubt that defendant acted with either the intent to kill, intent to cause great bodily harm, or in wanton and willful disregard of the likelihood of death or great bodily harm. *Goecke*, 457 Mich at 464. The medical examiner testified that the victim died of a gunshot to the chest; the medical examiner explained that the gunshot was fired from a gun that was a distance of three to four feet away. In addition, police found a gun hidden under a mattress in the upstairs of the home, which was indicative of defendant's consciousness of guilt. See *People v Kowalski*, 489 Mich 488, 508-509; 803 NW2d 200 (2011) (noting that concealment of evidence is probative of a defendant's consciousness of guilt). Finally, Brandon's statement to police that defendant was upset with Neubia for stealing her medication supported the inference that defendant had motive to kill Neubia. See *People v Unger*, 278 Mich App 210, 223; 749 NW2d 272 (2008) ("[a]lthough motive is not an essential element of the crime, evidence of motive in a prosecution for murder is always relevant."). In short, on this record, there was sufficient evidence to support defendant's conviction of second-degree murder.

There was also sufficient evidence to support defendant's felony firearm conviction. "The elements of felony-firearm are that the defendant possessed a firearm during the

commission of, or the attempt to commit, a felony." *People v Johnson*, 293 Mich App 79, 82-83; 808 NW2d 815 (2011). Defendant does not dispute that she was in possession of a firearm, and as stated above, there was sufficient evidence to prove that defendant committed second-degree murder. Therefore, there was sufficient evidence to support defendant's felony-firearm conviction.

Defendant next argues that the trial court erred when it allowed the prosecution to reopen proofs to introduce evidence of defendant's prior felony conviction for purposes of the felon in possession of a firearm charge.

We review a trial court's decision to reopen the proofs for an abuse of discretion. *People v Herndon*, 246 Mich App 371, 419; 633 NW2d 376 (2001). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *Unger*, 278 Mich App at 217.

"Relevant in ruling on a motion to reopen proofs is whether any undue advantage would be taken by the moving party and whether there is any showing of surprise or prejudice to the nonmoving party." *Herndon*, 246 Mich App at 420 (citations and quotation marks omitted). Here, before the prosecution moved to reopen proofs, defendant had already stipulated to the introducing of her prior felony conviction in order to establish that defendant was ineligible to possess a firearm at the time of Neubia's death. Thus, defendant cannot show that she was surprised or prejudiced or that the prosecution was afforded an undue advantage when the trial court reopened proofs and the trial court did not abuse its discretion in so doing. *Id*.

Defendant next argues that she was denied her right to the effective assistance of counsel when trial counsel failed to request a jury instruction on the defense of accident.

Whether a defendant was denied the effective assistance of counsel involves a mixed question of fact and constitutional law. *People v LeBlanc*, 465 Mich 575, 582; 640 NW2d 246 (2002). We review constitutional issues de novo while a trial court's findings of fact, if any, are reviewed for clear error. *Id*. at 583. "When no *Ginther* hearing has been conducted, our review [] is limited to mistakes that are apparent on the record." *People v Mack*, 265 Mich App 122, 125; 695 NW2d 342 (2005).

In order to prevail on an ineffective assistance of counsel claim, a defendant must show that counsel rendered deficient performance on an object standard and that there is a reasonable probability that, but for counsel's deficient performance, "the result of the proceeding would have been different." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001), citing *Strickland v Washington*, 466 US 668, 689; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

"A criminal defendant has the right to have a properly instructed jury consider the evidence against him." *People v Mills*, 450 Mich 61, 80-81; 537 NW2d 909 (1995), modified on other grounds, 450 Mich 1212 (1995). "The trial court's role is to clearly present the case to the jury and to instruct it on the applicable law." *People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007). "Jury instructions must include all the elements of the offenses charged against the defendant and any material issues, defenses, and theories that are supported by the evidence." *Id*. "Jury instructions are reviewed in their entirety, and there is no error requiring reversal if the

-3-

instructions sufficiently protected the rights of the defendant and fairly presented the triable issues to the jury." *Id*.

In this case, during closing argument, defense counsel argued that the shooting was accidental, stating that the gun went off while defendant was lying in the same bed with the victim. However, defense counsel did not request an accident instruction. There was no strategic reason why counsel would have argued that the death resulted from an accident, yet at the same time fail to request an instruction on the defense of accident. When presenting a defense theory it is objectively reasonable to request instructions on that defense theory in order to present the theory to the jury as a whole. Thus, given that there was no strategic reason to justify counsel's failure, counsel acted deficiently on an objective standard of reasonableness when he failed to request the instruction. *Carbin*, 463 Mich at 600.

Having concluded that counsel rendered deficient performance, we must proceed to determine whether counsel's deficient performance prejudiced the defense. *Id*. This requires that we determine whether there is a reasonable likelihood that but for counsel's failure to request the instruction, the result of the proceeding would have been different. *Id*.

Michigan Model Criminal Jury Instruction 7.1 requires a description of the accident that caused the death of the victim. M Crim JI 7.1. This Court has defined "accident" as "an event happening without any human agency, or if happening wholly or partly through human agency, an event which under the circumstances is unusual and unexpected by the person to whom it happens." *People v Hess*, 214 Mich App 33, 37; 543 NW2d 332 (1995).

In this case, we cannot find that defendant has met his burden of proving that but for counsel's failure, the result of the proceedings would have been different. *Carbin*, 463 Mich at 600. The jury instructions which set forth the intent element of murder made it clear to the jury that a finding of accident would be inconsistent with a finding that defendant was guilty of second-degree murder. Simply stated, if the jury had doubts regarding whether defendant had the requisite malice for second-degree murder, it would have acquitted defendant of second-degree murder. Instead, the jury found that defendant possessed a mental state greater than accidently shooting the victim. See, *People v Hawthorne*, 474 Mich 174, 184; 713 NW2d 724 (2006); *People v Lukity*, 460 Mich 484; 596 NW2d 607 (1999); *People v Rodriguez*, 463 Mich 466; 620 NW 2d 13 (200), (setting forth the principle that defendant has the burden of demonstrating that the failure to instruct on the accident defense undermined the reliability of the verdict). In conclusion, while defense counsel rendered deficient performance on an objective standard of reasonableness by failing to request an accident instruction, defendant has failed to show that counsel's deficient performance prejudiced the defense and she is not entitled to a new trial. *Carbin*, 463 Mich at 600. Accordingly, defendant is not entitled to relief on this issue.

Finally, defendant argues that she is entitled to a new trial because trial counsel was denied the full allotment of peremptory challenges during voir dire.

We review unpreserved constitutional issues for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 762-763; 597 NW2d 130 (1999).

MCR 6.412 states that a defendant who is charged with an offense punishable by life imprisonment is entitled to 12 peremptory challenges. MCR 6.412(E). MCR 2.511(E) provides that peremptory challenges are to be exercised as follows: "[f]irst the plaintiff and then the defendant must exercise one or more peremptory challenges until each party successfully waives further peremptory challenges or all of the challenges have been exercised, at which point jury selection is complete." MCR 2.511(E)(3)(a). When a party indicates a "pass," the pass "is not counted as a challenge but is a waiver of further challenge to the panel as constituted at that time." MCR 2.511(E)(3)(b). Because the right to peremptory challenges is provided by statute and court rule, the right is of non-constitutional dimension. Therefore, any error by the trial court does not entitle the defendant to automatic reversal. *People v Bell*, 473 Mich 275, 294-295; 702 NW2d 128 (2005), opinion corrected on reh 474 Mich 1201 (2005).

A review of the record demonstrates that the trial court did not deny defense counsel her full number of peremptory challenges. During voir dire, defense counsel used peremptory challenges on two prospective jurors. Towards the end of voir dire, defense counsel passed on any further peremptory challenges and the trial court believed that the jury was empaneled. However, prospective juror 13 indicated that he had a scheduling conflict and could not serve. Prospective juror 13 was replaced and the new prospective juror was questioned by the prosecution. The prosecution and defense passed on any challenges to the new prospective juror, but the prosecution used a peremptory challenge on prospective juror nine. The replacement for prospective juror nine then read aloud her answers to her questionnaire. The prosecution then asked all of the prospective jurors if they had been the victims of domestic violence. After the prospective jurors answered, defense counsel asked if any of them had been married for 20 years or more. After hearing all of the answers, the trial court asked the prosecution and defense if they had any challenges for cause. After the prosecution and defense passed, the trial court stated, "this is our jury."

While the trial court failed to ask if the parties wished to exercise any more peremptory challenges, defense counsel clearly indicated that he was satisfied with the jury and did not wish to make additional challenges. Defense counsel had time to raise any issues regarding peremptory challenges prior to the commencement of opening arguments and he did not do so. In sum, the trial court did not plainly err with respect to defendant's peremptory challenges.

Affirmed.


/s/ William B. Murphy
/s/ Henry William Saad
/s/ Stephen L. Borrello