*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
May 30, 2019

Plaintiff-Appellee,

v

No. 341245
Genesee Circuit Court
LC No. 17-041439-FC

JACOBIE ELIZA HALL,

Defendant-Appellant.

Before: TUKEL, P.J., and SHAPIRO and GADOLA, JJ.

SHAPIRO, J. (*concurring in part and dissenting in part*).

I respectfully dissent. On appeal, defendant primarily argues that the prosecution improperly used peremptory challenges to exclude three prospective jurors based on race and that the trial court failed to follow the procedure set forth in *Batson v Kentucky*, 476 US 79; 106 S Ct 1712; 90 L Ed 2d 69 (1986), for analyzing such a claim. I agree with defendant that the trial court did not complete the *Batson* analysis, and would therefore remand for an evidentiary hearing so that the trial court could make the required findings.[1]

## I. *BATSON* CHALLENGE

### A.

Defendant's *Batson* claim pertains to the prosecutor striking three African-Americans from the jury: TM, SC, and DA. The prosecutor used her first peremptory challenge to excuse TM without subjecting him to voir dire examination. SC was voir dired and later excused by the prosecution. The prosecutor also used a peremptory challenge on DA, who was not voir dired. After jury selection, defendant raised a *Batson* challenge and requested that the prosecutor provide race-neutral reasons for dismissing TM, SC, and DA as jurors. Defense counsel noted

---

[1] I agree with the majority as to the other issues defendant raises on appeal.

that TM and DA "never said a word" and that SC "was very brief in her responses" during voir dire examination.

The prosecutor gave the following reason for excusing TM:

Yes, um, when I was questioning all the rest of the jurors, he had the sunglasses on and he was glaring over the top of his sunglasses, you could see his forehead wrinkled, he was glaring, and kinda looking at me funny, and I didn't like the way his facial expressions were. Um, uh, the sunglasses threw me and he was glaring when I asked questions. I didn't, uh, get a good feeling from that.

As for DA, the prosecutor stated:

Uh, your Honor, when we were asking questions, she was kind of staring off into space and not really paying attention and, uh, if they're not paying attention during voir dire, they're not gonna pay attention during trial.

With respect to SC, the prosecutor explained:

Uh, yes, your Honor, she, I know this frankly sounds silly, but she had, uh, bright blue hair and had misspellings on her sheet and I—when they have misspellings on their sheet, it's an education level thing, I, when they have misspellings, I generally don't, uh, keep them as jurors, it's something I've always looked at.

The trial court then stated:

Well, those are the reasons so I don't think any of them are race motivated so we still, I'm gonna have the record show, we still have I believe three or four . . . [b]lack jurors now.

Defense counsel then stated for the record that she did not notice TM glaring over his sunglasses or DA "staring off into space . . . ." The trial court responded, "Okay. The record's preserved and I'm not, uh, persuaded that there's anything that's racially motivated here . . . I think [the prosecutor] had legitimate reason . . . ."

B.

In *Batson*, the United States Supreme Court held that the Equal Protection Clause prohibits a prosecutor from striking a prospective juror solely on the basis of race. *Batson*, 476 US at 89. The Court outlined a three-step process for analyzing a claim that the prosecution exercised a discriminatory preemptory challenge. *Id*. at 96-98. First, the defendant must make a prima facie showing of discrimination by demonstrating that "(1) the defendant is a member of a cognizable racial group; (2) peremptory challenges are being exercised to exclude members of a certain racial group from the jury pool; and (3) the circumstances raise an inference that the exclusion was based on race." *People v Bell*, 473 Mich 275, 282-283; 702 NW2d 128 (2005), mod 474 Mich 1201 (2005). On appeal, the prosecutor argues that the trial court erred in not determining whether defendant established a prima face case and that defendant did not, in fact,

-2-

satisfy that burden. However, because the prosecutor proceeded to the second step of the *Batson* analysis, she effectively waived defendant's burden on the first step. See *People v Tennille*, 315 Mich App 51, 63; 888 NW2d 278 (2016).

The second step requires the prosecution to offer a race-neutral reason for the preemptory challenge. *Batson*, 476 US at 98. In this case, the prosecutor offered race-neutral explanations for excluding the three prospective jurors. However, the trial court was then required to ascertain whether those explanations were pretext for discrimination:

> In conducting a *Batson* analysis, a court may not simply "accept" a prosecutor's race-neutral explanation and terminate the inquiry there. Rather, the trial court is tasked with engaging in a more penetrating analysis focused on ascertaining whether the prosecutor's proffered race-neutral reason is pretext intended to mask discrimination. [*Tennille*, 315 Mich App at 68.]

Argument from defense counsel is crucial to the court's determination, as it is a defendant's burden to show discrimination. *Id*. The trial court must then decide whether the prosecutor's proffered justification is credible:

> After affording the opponent of the challenge an opportunity to argue that the prosecutor's stated reason lacks credibility in light of all surrounding circumstances, the court must render findings focused on the prosecutor's demeanor when making the argument, whether the prosecutor's explanation is reasonable and probable, and whether the proffered rationale has some basis in accepted trial strategy. [*Id*. at 68-69 (quotation marks and citations omitted).]

If the race-neutral justification is predicated on a juror's demeanor, the trial court must specifically evaluate "whether the juror's demeanor can credibly be said to have exhibited the basis for the strike attributed to the juror by the prosecutor." *Snyder v Louisiana*, 552 US 472, 477; 128 S Ct 1203; 170 L Ed 2d 175 (2008).

> When demeanor serves as the sole ground for dismissal, some indication of whether the court observed the alleged expressions is required. If the court did not see the expressions, it must nonetheless find facts that either support or refute that racial discrimination motivated the challenge. This fact-finding hinges largely on credibility. [*Tennille*, 315 Mich App at 69.]

A demeanor-based explanation for a preemptory challenge is subjected to heightened scrutiny because such justifications "are particularly susceptible to serving as pretexts for discrimination." *Id*. at 65. Ultimately, "*Batson*'s third step requires the trial court to make a final determination of whether the challenger of the strike has established purposeful discrimination." *Id*.

In this case, the trial court made no findings except for stating the obvious: that the reasons articulated by the prosecutor were race neutral. This is precisely what a trial court may not do in analyzing a *Batson* claim. *United States v Jackson*, 347 F3d 598, 605 (CA 6, 2003) ("It is inappropriate for a district court to perfunctorily accept a race-neutral explanation without engaging in further investigation."). I disagree with the majority that the trial court's statement that the prosecutor's reasons were "legitimate" and not racially motivated was sufficient to

satisfy the court's duty to determine whether the prosecutor's proffered reasons were pretext for discrimination. In my view, this was merely a different way of saying that the prosecutor offered race-neutral explanations.

The lack of factual findings in this case is particularly concerning considering that the prosecutor offered demeanor-based justifications, two of which were disputed by defense counsel.[2] Specifically, defense counsel stated that she did not observe TM glaring over his sunglasses and DA being inattentive, as claimed by the prosecutor. The court may not have observed the demeanor or behavior that the prosecutor purportedly witnessed, but that does not absolve the court of its responsibility to make factual findings. The court was at least required to make a credibility determination regarding the prosecutor's assertions and to give reasons for that finding. Based on the record before us, I cannot presume that the trial court made a finding that the prosecutor's assertions were credible. See *Tennille*, 315 Mich App at 71. Rather, "[t]he absence of factual findings in this regard is compelling evidence that the trial court short-circuited the *Batson* process by failing to subject the prosecutor's demeanor claim to a dispassionate evaluation." *Id*. at 69. While a juror's demeanor or behavior can be a legitimate reason for a preemptory challenge, such justifications require a trial court to carefully examine the prosecutor's assertions and make findings on the record. Otherwise a defendant is denied meaningful appellate review, as we are unable to review the prosecutor's observation-based justifications for accuracy.

It bears repeating that TM and DA were not voir dired. And a prosecutor's "failure to engage in any meaningful voir dire examination on a subject the State alleges it is concerned about is evidence suggesting that the explanation is a sham and a pretext for discrimination." *Miller-El v Dretke*, 545 US 231, 246; 125 S Ct 2317; 162 L Ed 2d 196 (2005) (quotation marks and citation omitted). Contrary to the majority's position, there are obvious questions that the prosecutor could have asked regarding her concerns. For instance, the prosecutor could have asked TM whether he wore sunglasses to ameliorate a vision condition. Further, while SC was voir dired, there was nothing in her examination to indicate that she was not able to serve as a capable juror, and the prosecutor chose not to inquire into her "education level" or the reasons why she wore blue hair. That the majority goes to great lengths to ignore that the prosecutor could have easily asked such questions demonstrates that there is evidence suggesting pretext in this case.

In sum, the trial court made no factual findings regarding the prosecutor's race-neutral explanations. The court did not attempt to evaluate the credibility of the prosecutor's observations, despite argument to the contrary from defense counsel. Nor did the court make any effort to discern whether the prosecutor's justifications—even if accurate—were mere pretext for discrimination. For those reasons, I conclude that the trial court failed to make findings in accordance with *Batson*.

---

[2] To its credit, the trial court confirmed that SC misspelled a word on the juror questionnaire, and defense counsel did not dispute that SC had blue hair.

C.

When a trial court substantially fails to apply the *Batson* framework, the question becomes whether the defendant is entitled to a new trial or an evidentiary hearing where the trial court may make the necessary findings. See *Tennille*, 315 Mich App at 73. The prudent approach is to remand for a hearing on the condition that, if passage of time has made it impractical for the trial court to apply *Batson*, the defendant be granted a new trial. *Id*. at 74-75. The passage of time may make it difficult for the trial participants to recall the jurors' and prosecutor's demeanor. But the trial court may consider additional factors, such as "the number of minority jurors in the jury box at the time of the strikes, the number of minority jurors on the final jury,[3] the prosecutor's demeanor and credibility at the time he made the strikes . . . .' " *Id*. at 74. Accordingly, I would remand this case for an evidentiary hearing so that the trial court could make the required factual findings regarding defendant's claim.

/s/ Douglas B. Shapiro

---

[3] I acknowledge that the trial court noted that there were "three or four" African-American jurors on the final jury. But the court's consideration of this one factor does not excuse the court's substantial noncompliance with the *Batson* three-step process as outlined above.

-5-