# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

LANCE SMALLEY ROGERS,

      Defendant-Appellant.

UNPUBLISHED
May 19, 2015

No. 319726
Wayne Circuit Court
LC No. 13-002481-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

JAMIL LAKIM BRIGGS-CODY,

      Defendant-Appellant.

No. 319985
Wayne Circuit Court
LC No. 13-002482-FC

---

Before: BECKERING, P.J., and CAVANAGH and SAAD, JJ.

BECKERING, P.J. (*concurring in part, dissenting in part*).

Because I disagree with the result reached by the majority with regard to the *Batson*[1] issue, I write separately. I believe that the perfunctory treatment of the third step in the *Batson* analysis warrants remand. In all other respects, I concur in the result reached by the majority.

## I. PERTINENT FACTS

Jury selection began on October 30, 2013. While questioning prospective jurors, the prosecutor noted the young age of the defendants in this case and stated the following:

---

[1] *Batson v Kentucky*, 476 US 79; 106 S Ct 1712; 90 L Ed 2d 69 (1986).

-1-

I'm going to ask that you promise today that you will not allow sympathy or age or any reason to affect your verdict that you base your verdict on the evidence that's put before you and not the defendant's age or any other characteristics.

Thereafter, the prosecutor proceeded to ask each prospective juror about whether he or she could be fair in light of the young age of the defendants.

After several jurors had been dismissed, prospective juror TB was seated in seat 11. In response to questioning, TB[2] revealed that he was a college student who had never served on a jury, and who did not have any conflicts—schedule or otherwise—that would prevent him from serving on a jury. When the time came for the prosecutor to exercise peremptory challenges, he exercised a peremptory strike on TB. Counsel for defendant Rogers objected to the prosecutor's use of a peremptory on TB.[3] At the trial court's direction, the prosecutor addressed the challenge as follows:

> MR. ANDERSON [the prosecutor]. [TB] came in court and his body language and attitude was disrespectful to this Court and disrespectful to everyone else.
>
> And [he] had his collar up over his mouth talking through it as he answered and I didn't think he was--
>
> THE COURT. Suitable.
>
> MR. ANDERSON. Suitable enough to sit on the jury.
>
> THE COURT. I agree, denied.

Thereafter, *voir dire* continued, and new prospective jurors, including MK and HL—both of whom were African Americans—were seated to replace prospective jurors who had been dismissed. After the court questioned each juror to obtain basic background information from the jurors, such as what they did for a living and whether they had served on a jury before, the prosecutor asked whether the young age of the defendants would influence the jurors; both responded "[n]o," the age of the defendants would not influence them. After following up with questions to other prospective jurors, both sides passed for cause. At this time, the prosecutor exercised a peremptory challenge on MK. Shortly thereafter, *voir dire* was concluded for the day, and was set to resume at the next available date.

---

[2] In a subsequent challenge, defense counsel stated that TB was African-American.

[3] Defense counsel never made an argument under the first step of the *Batson* analysis, nor did counsel even specify whether the challenge was a *Batson* challenge. However, it appears the prosecutor and trial court treated the challenge as a *Batson* challenge, given that the prosecutor articulated a race-neutral reason for striking TB, and the trial court appeared to rule that the challenge was without merit.

On November 19, 2013, nearly three weeks later, *voir dire* resumed. At the outset, the trial court asked, before any jurors were questioned, whether there were any peremptory challenges. The prosecutor exercised a peremptory challenge on prospective juror HL.[4] This prompted an objection from Ms. Coleman, who was trial counsel for defendant Briggs-Cody, along with the following exchange:

> MS. COLEMAN. Your Honor if we can approach prior to [the prospective jurors] being released[?]
>
> THE COURT. Why? I'm not going to do that.
>
> MS. COLEMAN. All of the prosecutor[']s--
>
> THE COURT. If she's going to make this argument. That's right you don't say it in front of the jury. What two numbers are those?

Thereafter, the trial court excused the jury. At this point, it appears there was an off-the-record discussion for approximately 45 minutes. There is no indication as to the content of this discussion, and the parties have not made any allegations about the discussion on appeal. When the proceedings resumed approximately 45 minutes later, there was no mention of the *Batson* challenge, and *voir dire* continued until a jury was chosen.

Trial began the next day, November 20, 2013. Before opening statements, Ms. Coleman indicated she wished to place an objection on the record, and Mr. Toussaint, counsel for defendant Rogers, indicated he would like to make an argument as well.

> MS. COLEMAN. At this time we'd like to make a *Baskin* [sic] challenge to three of the jurors that were dismissed by the prosecution.
>
> We believe that they were dismissed solely on the basis of race. That being jurors number [sic] seated in seat number 1, [HL,] juror seated in seat number 7, [MK,] and juror seated in seat number 11, [TB].
>
> We believe that the prosecution [sic] 7 of their 10 preemptory [sic] challenges were based on race and they were black and we believe that the last three were based solely on race.
>
> There is no indication or no information from those jurors about any kind of by [sic] bias relative [sic] or anything like that and we would challenge those dismissals.

---

[4] The prosecutor also exercised a peremptory challenge on prospective juror MR at this time. At trial, defense counsel's *Batson* challenge included MR. On appeal, Rogers makes no mention of MR. Thus, my analysis of the *Batson* issue does not include MR.

MR. TOUSSAINT. That is correct your Honor on behalf of Mr. Rogers I would so join in counsel's argument.

THE COURT. Response.

MR. ANDERSON. Response[.] Judge of course that is preposterous and way out of line. Judge if you look at the makeup of this jury it is almost 50 percent.

I don't really know how many African Americans are on the jury I refute all of they're [sic] arguments. I had 10 preemptories [sic] left and if I was dismissing a juror based on race the jury would not look like this.

And I object to the *Baskin* [sic] challenge.

MR. TOUSSAINT. And your Honor, based upon it's not that the jury is 50 percent black it depends upon the challenges that were made to those particular jurors.

Those particular jurors that we did have especially juror number 1 and that was [HL] and [MR] those jurors had been selected from the earlier pool that we had and those jurors were similarly dismissed yesterday before the new panel was brought up.

And it does not matter whether or not it has to be particular reasons why those jurors were dismissed.

And there was nothing on the record and the prosecutor is indicating now that indicates any other reasons that those jurors were dismissed just based upon the race.

THE COURT. Well, from what I recall the defense has excused African American jurors. We also have a trial where the defendant's [sic] are African American.

The defense attorneys are African Americans and the prosecutor is an African American. The officer in charge is African American.

The Court is African American and I see no bases [sic] for this challenge. Respond, you want to respond again.

MR. ANDERSON. Your honor the individuals that they are speaking of I believe Judge there is no secret about my trial strategy these defendant's [sic] are very young and my trial strategy [is that] I release whoever I think will be overly sympathetic to these individuals.

I have to go by answers I have to go by body language and I have to go by appearance. I have to go by the way they relate to me and the way they relate to the Court and the defense.

Those are the reasons that I used to dismiss people your Honor not simply race.

THE COURT. All right.

Based upon the Court's own observation and arguments the Court finds that there is no bases [sic] for this challenge.

## II. ANALYSIS

### A. *BATSON* FRAMEWORK

"A prosecutor violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution when he or she uses a peremptory challenge to remove a prospective juror solely because of the juror's race." *People v Armstrong*, 305 Mich App 230, 237; 851 NW2d 856 (2014). In *Batson*, 476 US at 96-98, the United States Supreme Court established a three-step process for determining whether a peremptory challenge was exercised in violation of the Equal Protection Clause. "First, the opponent of the peremptory challenge must make a prima facie showing of discrimination." *People v Knight*, 473 Mich 324, 336; 701 NW2d 715 (2005). A prima facie case requires the opponent of the peremptory challenge to establish three things:

> (1) he is a member of a cognizable racial group; (2) the proponent has exercised a peremptory challenge to exclude a member of a certain racial group from the jury pool; and (3) all the relevant circumstances raise an inference that the proponent of the challenge excluded the prospective juror on the basis of race. [*Id.*]

The opponent of the peremptory challenge need not prove discrimination; instead, he or she need only offer facts that give rise to an inference that the party exercising the peremptory challenge had a discriminatory intent. *Knight*, 473 Mich at 336-337; *Armstrong*, 305 Mich App at 238.

Regarding the second step in the analysis, after the party opposing the peremptory challenge makes a prima facie showing, the burden shifts to the party who made the peremptory challenge to provide a race-neutral explanation. *Knight*, 473 Mich at 337. This step "does not demand an explanation that is persuasive, or even plausible. Rather, the issue is whether the proponent's explanation is facially valid as a matter of law." *Id.* (citation and quotation marks omitted). "The neutral explanation must be related to the particular case being tried and must provide more than a general assertion in order to rebut the prima facie showing." *People v Bell*, 473 Mich 275, 283; 702 NW2d 128 (2005), amended in part on other grounds 474 Mich 1201 (2005).

As to the third step of the analysis, if the proponent provides a race-neutral explanation, the trial court must determine whether the explanation was pretextual or whether the opponent of the challenge has proved discrimination. "Since *Batson,* the Supreme Court has commented that

the establishment of purposeful discrimination 'comes down to whether the trial court finds the . . . race-neutral explanations to be credible.' " *Bell*, 473 Mich at 283, quoting *Miller-El v Cockrell*, 537 US 322, 339; 123 S Ct 1029; 154 L Ed 2d 931 (2003). "It must be noted, however, that if the proponent of the challenge offers a race-neutral explanation and the trial court rules on the ultimate question of purposeful discrimination, the first *Batson* step (whether the opponent of the challenge made a prima facie showing) becomes moot." *Knight*, 473 Mich at 338. Here, the trial court appeared to rule on the ultimate question of purposeful discrimination; thus, the first *Batson* step, i.e., a prima facie showing of discrimination, is moot. *Id.*

## B. STANDARD OF REVIEW

The applicable standard of review is dependent upon which of the three steps is at issue. *Knight*, 473 Mich at 338. For this reason, and because "the parties, the trial court, and the jurors are well-served by thoughtful consideration of each of *Batson*'s steps[,]" our Supreme Court has stated the importance of "faithful adherence to the *Batson* procedures . . . ." *Id.* at 338-339. Such adherence is intended to produce a clear record of the reasons for the trial court's ruling on the challenge. See *id.* at 339 ("Our trial courts must meticulously follow *Batson*'s three-step test, and we *strongly* urge our courts to *clearly* articulate their findings and conclusions on the record.").

As noted above, the trial court ruled on the ultimate issue of discrimination, meaning that the first step of the *Batson* analysis is moot. An appellate court reviews de novo the second step—whether the proponent of the peremptory challenge articulated a race-neutral explanation. *Id.* at 345. With regard to the third step—the trial court's determination concerning whether the explanation is a pretext and whether purposeful discrimination has been proven—an appellate court reviews the trial court's ruling for clear error. *Id.* "[T]he trial court's ultimate factual finding is accorded great deference." *Id.* at 344.

## C. ANALYSIS

One of the problems with this case is that the trial court did not "meticulously follow" the three-step *Batson* test. After hearing arguments about the prosecutor's use of peremptory challenges, including arguments from defense counsel concerning how a *Batson* challenge should focus on the particular jurors who were dismissed, the trial court stated that it saw "no bases [sic] for this challenge" and commented that it, along with defendants, the prosecutor, the defense attorneys, and the officer-in-charge were all African American. The trial court's comments were largely irrelevant to any step of the *Batson* analysis. It appeared to rule, at this time, on the ultimate issue of discrimination, yet the prosecutor had not even attempted to provide a race-neutral explanation for the challenges. Nor were any of the trial court's comments at this point relevant to the *Batson* framework. Simply stating the races of the participants involved in the trial bore no relation to whether the prosecutor engaged in impermissible discrimination.

After the trial court had essentially rejected the *Batson* challenge, the prosecutor provided a race-neutral explanation for his exclusion of the challenged jurors. The prosecutor stated that, based on a general strategy of excluding jurors he thought would be overly sympathetic to the young defendants, along with the jurors' body language, appearance, and how the jurors related

to him, the court, and the defense attorneys, he decided to strike the challenged jurors. A juror's body language, as well as concerns that the juror may be sympathetic due to the age of the defendant, can be a race-neutral explanation for exercising peremptory strikes. See *Snyder v Louisiana*, 552 US 472, 479; 128 S Ct 1203; 170 L Ed 2d 175 (2008); *Purkett v Elem*, 514 US 765, 768; 115 S Ct 1769; 131 L Ed 2d 834 (1995). See also *Knight*, 473 Mich at 337 (citation and quotation marks omitted; alternation in original) ("A neutral explanation in the context of our analysis here means an explanation based on something other than the race of the juror . . . . Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral."). Such reasons would satisfy the second step of the *Batson* analysis.[5]

However, a problem arises in this case because the trial court gave cursory treatment to the third step of the analysis. The trial court stated that "[b]ased upon the Court's own observation and arguments" there was no basis for the *Batson* challenge. The trial court's reasoning did not address or even acknowledge the prosecutor's alleged race-neutral explanation. The trial court's stated reasons for denying the challenge were too vague to allow a determination of whether the court made a factual determination about the validity of the prosecutor's alleged reason for striking the jurors. There is no way of knowing, beyond engaging in speculation, whether the trial court's ambiguous comment about its "observations" was related to the prosecutor's stated reasons for striking the prospective jurors. This problem is amplified, in part, because the prosecutor's proffered statement was itself vague and generic. The prosecutor did not make any reference to the jurors as individuals or give any indication as to why these particular jurors engaged in behavior that would cause him to believe that they would be overly sympathetic to the young defendants in this case. I decline to find that the trial court's vague assertion about its "observations" was somehow a factual finding that confirmed the sweeping, non-specific statement offered by the prosecutor as his reason for striking particular jurors. Indeed, an appellate court may not engage in speculation or supply its own reasons for finding that the prosecutor has proffered a valid, non-discriminatory reason for dismissal. See *Miller-El v Dretke*, 545 US 231, 252; 125 S Ct 2317; 162 L Ed 2d 196 (2005) ("A *Batson* challenge does not call for a mere exercise in thinking up any rational basis. If the stated reason does not hold up, its pretextual significance does not fade because a trial judge, or an appeals court, can imagine a reason that might not have been shown up as false.").

Unfortunately, because the trial court's perfunctory treatment of the third *Batson* step is void of factual findings, the best this Court can do is to speculate about whether the prosecutor's stated motivation for excusing the jurors is a legitimate, non-pretextual reason for dismissal. The transcript reveals that each of the challenged jurors responded that they could be fair and would not let the young age of the defendants factor into their decision-making. The transcript reveals

---

[5] I note that the prosecutor's proffered reason for striking the jurors in this case was not particularly persuasive, especially with regard to jurors MK and HL. With regard to those jurors, the prosecutor provided a generic reason, with no discussion of the individual circumstances of each juror. Instead, he simply provided a blanket statement. However, "[i]t is important to bear in mind that it is not until *Batson*'s third step that the persuasiveness of the proffered explanation for the peremptory challenge becomes relevant." *Knight*, 473 Mich at 343.

no insight into the body language or reactions of the prospective jurors. The prospective jurors may have displayed body language to indicate that they would have been overly sympathetic to the young defendants. Had the trial court made the requisite findings of fact, the body language of prospective jurors could have supported a strike. See *Snyder*, 552 US at 479. However, while an appellate court is to afford great deference to the trial court's factual findings on a *Batson* challenge, a reviewing court cannot defer when there is no finding to which to defer. See *id.* In *Snyder*, the United States Supreme Court declined to rely on a prosecutor's explanation for the exercise of a peremptory challenge where the trial court made no factual findings and where the transcript provided no means to verify the prosecutor's explanation. *Id.* In *Snyder*, the prosecutor cited a prospective juror's nervousness as one of the reasons for striking the juror. The trial judge in that case made no findings as to that particular juror's demeanor. *Id.* The Supreme Court declined to speculate about the prospective juror's nervousness and declined to "presume that the trial judge credited the prosecutor's assertion that [the juror] was nervous." *Id.*

Similarly, in the case at bar, it is improper to speculate about the prosecutor's proffered reasons for striking the jurors. Just as in *Snyder*, the trial court made no factual findings in this regard. And, just as in *Snyder*, the transcripts do not provide a means for verifying the prosecutor's alleged reasons for striking the jurors. Each of the prospective jurors indicated that they could be fair and that they would not be influenced by the youth of the defendants. The transcripts provide no means for determining the body language of the prospective jurors during this questioning—or during any questioning, for that matter.[6] As such, I will not presume that the factual basis for the prosecutor's explanation was correct, and I decline to rely on that basis to affirm the trial court's decision. See *Snyder*, 552 US at 479.[7]

---

[6] The record reveals that the prosecutor did not engage any of the challenged jurors in extensive voir dire about their respective abilities to refrain from being influenced by the defendants' youth. As noted by our Supreme Court in *Miller-El v Dretke*, 545 US 231, 246; 125 S Ct 2317; 162 L Ed 2d 196 (2005), "[t]he State's failure to engage in any meaningful voir dire examination on a subject the State alleges it is concerned about is evidence suggesting that the explanation is a sham and a pretext for discrimination[.]" (Citation and quotation marks omitted).

[7] The trial court's October 30, 2013 ruling with regard to the prosecutor's challenge to TB, while brief, could be viewed as a factual finding to which an appellate court should defer. With regard to TB, the prosecutor stated that TB's "body language and attitude" were disrespectful and that he covered his mouth while answering questions. In response to this race-neutral reason for striking TB, the trial court stated "I agree." In this regard, the trial court made, albeit briefly, a factual finding that defendants could not establish purposeful discrimination, as it stated its agreement with the prosecutor's recitation of the facts. This finding is to be accorded great deference by the reviewing court. See *Knight*, 473 Mich at 344. However, while defendants are unable to show purposeful discrimination with regard to TB, the same cannot be said, based on the incomplete ruling of the trial court, with regard to HL and MK. Because "[t]he Constitution forbids striking even a single prospective juror for a discriminatory purpose[,]" *Synder*, 552 US at 478 (citation and quotation marks omitted), defendants' failure to show purposeful discrimination with regard to TB is not fatal to their case.

In addition, I note that the trial court's stated reason for denying the *Batson* challenge was based, in part, on "the Court's own . . . arguments . . . ." This too is problematic. The only "argument" made by the trial court was its assertion that, because all of the parties involved in the case were African American, there was no basis for the *Batson* challenge. Such a statement is simply not relevant to a *Batson* challenge. The pertinent inquiry—whether the opponent of the peremptory challenge has proved purposeful discrimination—looks at the particular jurors who were challenged and whether the exclusion of *those jurors* violates the defendant's rights under the Equal Protection Clause. See, e.g., *Batson*, 476 US at 98; *Knight*, 473 Mich at 335, 345; *Bell*, 473 Mich at 282, 292. In sum, I believe the trial court failed to properly analyze the third step of the *Batson* analysis because it made no factual findings and because the only reasoning that fairly be discerned from the trial court's denial of the challenge was irrelevant to a *Batson* analysis.

## D. REMEDY

Having concluded that the trial court failed to follow the *Batson* framework and that its failure to do so inhibits appellate review, the next inquiry concerns the appropriate remedy in this case. Our Supreme Court has stated that "[a] *Batson* error occurs when a juror is actually dismissed on the basis of race or gender. It is undisputed that this type of error is of constitutional dimension and is subject to automatic reversal." *Bell*, 473 Mich at 293 (citation omitted). Here, however, it is not clear whether a *Batson* error has occurred. Indeed, given the lack of clarity in this case, it cannot be determined whether a juror was "actually dismissed on the basis of race . . . ." Consequently, I find that remand is required in order for the trial court to conduct a full and complete analysis on the third *Batson* step. See, e.g., *United States v McAllister*, 693 F3d 572, 580 (CA 6, 2012); *Coombs v Diguglielmo*, 616 F3d 255, 263 (CA 3, 2010) (remanding where the trial court did not make the requisite factual findings and where it "fail[ed] to undertake a full step three analysis . . ."). On remand, I would require the trial court to make and place on the record its factual findings and legal conclusions. I would retain jurisdiction on this issue.

Lastly, I note that although any *Batson* issue would affect both defendants, only defendant Rogers raises a *Batson* challenge on appeal. However, given the significance of the constitutional rights involved, and that defendant Briggs-Cody pursued the same *Batson* challenge before the trial court, I would remand in both cases. See MCR 7.216(A)(7) (authorizing this Court, in its discretion, and on terms it deems just, to "enter any judgment or order or grant further or different relief as the case may require").

Because I believe that the *Batson* issue warrants further findings and analysis by the trial court, I would reverse and remand for further proceedings consistent with this opinion. I would retain jurisdiction. In all other respects, I would affirm the result reached by the majority.


/s/ Jane M. Beckering