# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JAMES CLARENCE DOCK, JR.,

Defendant-Appellant.

UNPUBLISHED
January 10, 2017

No. 328807
Genesee Circuit Court
LC No. 15-036866-FH

Before: BOONSTRA, P.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM.

Defendant appeals by right his conviction, following a jury trial, of possession with intent to deliver less than 50 grams of heroin (possession with intent to deliver), MCL 333.7401(2)(a)(*iv*).[1]  The trial court sentenced him to 4 to 20 years' imprisonment.  We affirm.

## I.  PERTINENT FACTS AND PROCEDURAL HISTORY

This case arises from a traffic stop.  Michigan State Troopers Jonathan Miller and Louis Velaga stopped defendant's vehicle on Dort Highway for improperly travelling in the left lane and appearing not to have a valid registration sticker.  Defendant was driving the vehicle with a passenger.  Defendant could not produce a valid driver's license.  Defendant consented to a search of his person and vehicle for weapons and drugs.  Velaga found a plastic bag in defendant's pocket that laboratory testing revealed to contain 9.4 grams of heroin.  Velaga also found a scale between the driver's seat and the center console.

At trial, Velaga testified regarding his training and education regarding narcotics, and to his opinion that the combination of finding heroin and a scale together indicated narcotics trafficking.  Sergeant Bradly Ross of the Michigan State Police was qualified as an expert in heroin trafficking in the Genesee County area, and opined from the way the heroin was packaged and concealed, and the fact that defendant also had a digital scale, that the heroin was possessed

---

[1] Defendant was originally also charged with possession with intent to deliver less than 50 grams of cocaine, MCL 333.7401(2)(a)(*iv*), but that charge was dismissed before trial.

for sale. He testified that his conclusion was strengthened by the amount of heroin, which he characterized as unusual for personal use, as well as the fact that no heroin use paraphernalia was found with defendant.

Defendant was convicted and sentenced as described above. This appeal followed.

## I. *BATSON* CHALLENGE

Defendant first argues that the prosecution improperly used a peremptory challenge to exclude Juror Hudson from the jury based on race, in violation of *Batson v Kentucky*, 476 US 79, 89; 106 S Ct 1712; 90 L Ed 2d 69 (1986). We disagree.

Defense counsel challenged the dismissal of Hudson during voir dire. "A defendant's preserved challenge to the prosecutor's use of a peremptory challenge on the basis that it violated the Equal Protection Clause is a mixed question of fact and law." *People v Armstrong*, 305 Mich App 230, 237; 851 NW2d 856 (2014), citing *People v Knight*, 473 Mich 324, 342; 701 NW2d 715 (2005).

"A prosecutor violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution when he or she uses a peremptory challenge to remove a prospective juror solely because of the juror's race." *Armstrong*, 305 Mich App at 237, citing *Batson*, 476 US at 89 and *Knight*, 473 Mich at 335. A three-step process is used "to determine whether the defendant has shown impermissible discrimination." *Armstrong*, 305 Mich App at 237-238. First, the defendant must establish a prima facie case of discrimination. *Id.* at 238.[2] Second, if the defendant establishes a prima facie case, the burden shifts to the prosecutor to provide a race-neutral explanation for use of the peremptory challenge. *People v Bell*, 473 Mich 275, 283; 702 NW2d 128 (2005), mod 474 Mich 1201 (2005), citing *Batson*, 476 US at 97. "Third, the trial court must determine whether the prosecutor's explanation is a pretext for discrimination." *Armstrong*, 305 Mich App at 238, citing *Batson*, 476 US at 98 and *Knight*, 473 Mich at 337-338.

This Court reviews the second *Batson* step de novo. *People v Tennille*, ___ Mich App ___, ___, ___ NW2d ___ (2016) (Docket No. 323059); slip op at 5, citing *Knight* 473 Mich at 343. "The third step in the *Batson* analysis requires the trial court to determine whether the challenger has sustained his burden of demonstrating a racial motivation for the challenged peremptory strikes. This constitutes a question of fact reviewed for clear error." *Tennille*, ___ Mich App at ___; slip op at 5, citing *Knight*, 473 Mich at 344.

---

[2] Defendant does not address whether he has satisfied step one of the *Batson* analysis. Regardless, " '[o]nce a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue whether the defendant had made a prima facie showing becomes moot.' " *Tennille*, ___ Mich App at ___; slip op at 6, quoting *Hernandez v New York*, 500 US 352, 359; 111 S Ct 1859; 114 L Ed 2d 395 (1991), and *Bell*, 473 Mich at 296.

With regard to step two, the prosecutor articulated race-neutral reasons for using a peremptory challenge to exclude Hudson. To satisfy this step, an "explanation must be related to the particular case being tried and must provide more than a general assertion in order to rebut the prima facie showing." *Bell*, 473 Mich at 283, citing *Batson*, 476 US at 97-98. The explanation must also be "clear and reasonably specific," but "so long as the reason is not inherently discriminatory, it suffices." *Tennille*, ___ Mich App at ___; slip op at 6-7 (quotation marks and citations omitted).

In response to defense counsel's claims that the prosecution excused Juror Hudson because he is a young African-American male, the prosecutor explained that she peremptorily challenged Hudson not because of his race, but because he was not very responsive or engaged. Specifically, she stated:

> There were some responses that he gave. At one point in time he laughed, did not feel as though he needed to offer a response for laughing at a question. I didn't think that he was very responsive throughout the whole time. I didn't feel like he was engaged, and that's why I asked him to be removed from the jury. Not because he's a young African[-]American male, but because I didn't think that he was necessarily engaged or paying attention, and I don't think that that's an appropriate person to be on this jury.

This explanation was clear and specific. The prosecutor justified her exclusion of Juror Hudson by providing examples of his behavior. Further, her stated reasons were not inherently discriminatory because they were based on Hudson's behavior rather than his race.

To satisfy step three of the *Batson* analysis, the trial court should examine the credibility of the prosecutor's race-neutral explanation by considering the prosecutor's demeanor, the reasonableness of the explanation, and "whether the proffered rationale has some basis in accepted trial strategy." *Bell*, 473 Mich at 283 (quotation marks and citation omitted). In so doing, it must make findings of fact. *Tennille*, ___ Mich App at ___; slip op at 6. We conclude that the trial court did not err when it concluded that the prosecutor's stated explanation for dismissing Hudson was not a pretext for discrimination.

In making its determination, the trial court considered the credibility of the prosecutor's proffered explanation, and made findings of fact. Specifically, the court stated:

> All right. Let me just indicate I think that I am sensitive to those issues having sat here for 19 years now, the issue of race. Based upon I suspects [sic] it's hundreds of cases now that I think about it that I've tried I have to say I did not think he was particularly responsive in an appropriate way to some of the questions, and didn't seem to understand some of the explanations that were given.
>
> So, I don't think that this record and the transcript would show that he was singled out because of his race. I think he had other issues that were of some concern to the prosecutor. So, that's all there is on that.

The record supports the trial court's findings. During voir dire, the following exchange took place between the prosecutor and Hudson:

> [*Prosecutor*]: In terms of witnesses, do you think that you have to like a person to believe what they say? No? Is it possible that you might hear from a witness, you may not like that witness, but you still believe what it is that they're testifying to? Okay. If you didn't like someone, is there anyone that would automatically disregard their testimony? Juror in seat number four, did you have any thoughts on that?

> *Juror Hudson*: No.

> [*Prosecutor*]: No. Okay. Just a question? Okay. You don't have anything to add on that? Okay. Juror in seat number six?

Further, when asked if he would be comfortable working with other people to reach a conclusion in the case, Hudson admitted to being stubborn. After some back-and-forth, the exchange continued as follows:

> [*Prosecutor*]: Okay. If you reached a conclusion, would you have an inability to sit down and listen to other points of view, hash it out, work through it rationally, or would you just be set in your ways and not willing to--

> *Juror Hudson*: If I don't agree with the majority, I'm just not going to agree with it.

> [*Prosecutor*]: Okay, but are you -- would you still listen to other people's points of view? I'm not asking you if you would let them bully you into a decision one way or the other.

> *Juror Hudson*: Yeah, I'll listen.

Considering these exchanges, it was not unreasonable for the prosecutor to believe that Hudson would not have been a responsive or engaged juror. It appears that he refused to elaborate on answers, despite the prosecutor prompting him to do so, and may have had a difficult time working with others to reach a verdict. Thus, the court did not err in finding that the prosecutor's explanation for peremptorily challenging Juror Hudson was not a pretext for discrimination. We also note that the prosecutor also peremptorily challenged Juror Curtis, who provided similar answers to those given by Hudson regarding the willingness to work with others. Although Curtis's race is not determinable from the record, defendant does not challenge his exclusion from the jury.

## II. DRUG TRAFFICKING TESTIMONY

Defendant also argues that the trial court erred by allowing Velaga to testify regarding the scale found in defendant's possession and the lack of use paraphernalia, without being qualified as an expert in drug trafficking, and by allowing Ross to testify about preserving evidence for fingerprint and DNA testing without being qualified as an expert in evidence preservation.

Further, defendant asserts that the trial court erred by qualifying Ross as an expert in the sale, trafficking, and distribution of heroin absent a showing that such expert testimony met the requirements of MRE 702. We disagree.

To preserve a claim of evidentiary error, "a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001), citing MRE 103(a)(1) and *People v Grant*, 445 Mich 535, 545, 553; 520 NW2d 123 (1994). Defense counsel did not object to Velaga's testimony regarding the scale found in defendant's possession and the lack of use paraphernalia, and also failed to object to Ross's testimony about the preservation of evidence for fingerprint and DNA testing. Thus, defendant's claims related to the admission of their testimony have not been preserved for appellate review. However, defense counsel did challenge Ross's qualification as an expert in the sale, trafficking, and distribution of heroin. Therefore, this claim has been preserved for appellate review.

When an evidentiary issue has been preserved, this Court reviews the trial court's decision to admit evidence for an abuse of discretion, and reviews de novo "preliminary questions of law, such as whether a rule of evidence precludes admissibility." *People v Chelmicki*, 305 Mich App 58, 62; 850 NW2d 612 (2014). Further, a trial court's " 'determination regarding the qualification of an expert and the admissibility of expert testimony is within the trial court's discretion.' " *People v Unger*, 278 Mich App 210, 216; 749 NW2d 272 (2008), quoting *People v Murray*, 234 Mich App 46, 52; 593 NW2d 690 (1999). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *Unger*, 278 Mich App at 217.

Unpreserved evidentiary claims are reviewed for plain error affecting substantial rights. *Chelmicki*, 305 Mich App at 62. A plain error affects substantial rights when "the error affected the outcome of the lower court proceedings." See *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (quotation marks and citation omitted).

## A. LAY OPINION TESTIMONY

Because Velaga was not qualified as an expert in the sale and distribution of narcotics, and Ross was not qualified as an expert in evidence processing, their testimony is governed by MRE 701. See *People v Daniel*, 207 Mich App 47, 57; 523 NW2d 830 (1994). MRE 701 provides:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

Police officers may provide lay opinion testimony if such testimony is not overly scientific or technical, and is based on personal knowledge. See *People v Oliver*, 170 Mich App 38, 50; 427 NW2d 898 (1988), mod 433 Mich 862 (1989).

The trial court properly admitted Velaga's testimony under MRE 701, as it was based on his perceptions and personal knowledge, and was not overly scientific or technical. Before explaining what the scale found in defendant's possession could be used for, and that he failed to find use paraphernalia in defendant's possession, Velaga said that he studied items like the scale at the police academy, and that he received training and education in items consistent with the use of narcotics. His testimony on these subjects was brief and general, and was helpful to a clear understanding of the evidence found in defendant's possession. MRE 701; *Oliver*, 170 Mich App at 50.

The trial court also did not err when it admitted Ross's challenged testimony regarding fingerprinting and DNA testing under MRE 701. Like Velaga's statements, Ross's testimony was based on his own perceptions and opinions, and was not overly scientific or technical. Ross's testimony came in response to the prosecutor asking what would make him preserve evidence for fingerprint and DNA testing during his own investigations, and whether he would feel the need to test for fingerprints or DNA when he found narcotics on someone's person. At the time of trial, Ross had worked for the Michigan State Police for almost 17 years, and spent three years running undercover narcotics operations. Further, the testimony was helpful to the jury's understanding of why Velaga may have chosen not to preserve the purple glove and plastic bag for fingerprint and DNA analysis. MRE 701; *Oliver*, 170 Mich App at 50.

Further, even if the trial court erred by admitting the challenged testimony, the error did not affect the outcome of the proceedings. The prosecution presented significant additional evidence that defendant possessed the heroin with the intent to deliver. Velaga testified that he found the heroin in defendant's pocket, and that defendant admitted the scale found in the car was his. This evidence was supported by Ross's expert testimony, which, as discussed below, was properly admitted. Thus, no plain error occurred in the admission of the challenged lay opinion testimony. See *Carines*, 460 Mich at 763.

## B. EXPERT TESTIMONY

The trial court did not abuse its discretion when it qualified Ross as an expert in the sale, trafficking, and distribution of heroin. Ross provided testimony similar (but more detailed and technical) to that provided by Velaga, but based on his expert qualifications and review of the police report, rather than personal experience. Ross opined that the scale found in defendant's possession and the lack of use paraphernalia indicated the intent to deliver, rather than use, the heroin.

MRE 702 governs the admissibility of expert testimony, and provides:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The trial court must serve as a gatekeeper for expert testimony "under MRE 702 'to ensure that any expert testimony admitted at trial is reliable.' " *People v Dobek*, 274 Mich App 58, 94; 732 NW2d 546 (2007), quoting *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 780; 685 NW2d 391 (2004). "The critical inquiry . . . is whether such testimony will aid the factfinder in making the ultimate decision in the case." *People v Ray*, 191 Mich App 706, 707; 479 NW2d 1 (1991), citing *People v Smith*, 425 Mich 98, 105; 387 NW2d 814 (1986). "[T[his Court has held that a prosecutor may use expert testimony from police officers to aid the jury in understanding evidence in controlled substance cases." *Murray*, 234 Mich App at 53, citing *Ray*, 191 Mich App at 707.

The prosecution presented sufficient evidence to support the trial court's determination that Sergeant Ross possessed the knowledge, skill, experience, training, or education necessary to testify as an expert regarding the sale, trafficking, and distribution of heroin. He testified that he had been employed by the Michigan State Police for almost 17 years, as a uniformed sergeant and a trooper with the city of Flint, and that he also spent three years as an undercover officer, attending basic and advanced narcotics schools, and making undercover narcotics purchases. Further, he said that he had testified as an expert in the sale, trafficking, and distribution of narcotics in Genesee County 59 times in district court and three times in circuit court.

Additionally, Ross provided specialized knowledge about the evidence presented at trial, beyond Velaga's general testimony regarding the scale and the lack of use paraphernalia found in defendant's possession. He testified extensively that the amount of heroin defendant possessed (with a street value of approximately $1,500), in combination with the scale and the lack of use paraphernalia, informed his opinion that defendant possessed the heroin for sale rather than for use. This was an issue to be decided by the jury. His testimony included information regarding the amount of heroin a typical user consumes and possesses at one time, as well as the number of single doses that could be created from the amount of heroin defendant possessed. Thus, the trial court did not abuse its discretion in qualifying Sergeant Ross as an expert in, and allowing him to testify about, the sale, trafficking, and distribution of heroin. *Unger*, 278 Mich App at 217.

## C. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also argues that his defense counsel was ineffective for failing to object to the trial court's admission of Velaga and Ross's lay opinion testimony. We disagree.

Claims of ineffective assistance of counsel are mixed questions of law and fact. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). This Court reviews a trial court's findings of fact for clear error, and reviews questions of constitutional law de novo. Generally, to preserve a claim of ineffective assistance of counsel, a defendant must file a motion for a new trial or *Ginther*[3] hearing in the trial court to establish evidence supporting the claim. *People v Sabin* (*On Second Remand*), 242 Mich App 656, 658-659; 620 NW2d 19 (2000). Defendant did not move for a new trial or a *Ginther* hearing in the trial court. Thus, our review is limited to mistakes apparent on the record. *Id*. at 659.

---

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

To evaluate a claim of ineffective assistance of counsel, this Court uses the standard established in *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). See *Hoag*, 460 Mich at 5-6, citing *People v Pickens*, 446 Mich 298; 521 NW2d 797 (1994). For a successful claim of ineffective assistance of counsel, the defendant must show: "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51. The effective assistance of counsel is presumed, *People v Roscoe*, 303 Mich App 633, 644; 846 NW2d 402 (2014), and a defendant must overcome the presumption that defense counsel's actions were sound trial strategy. *Trakhtenberg*, 493 Mich at 52. "[T]his Court will not second-guess counsel regarding matters of trial strategy, and even if defense counsel was ultimately mistaken, this Court will not assess counsel's competence with the benefit of hindsight." *People v Rice* (*On Remand*), 235 Mich App 429, 445; 597 NW2d 843 (1999).

Defense counsel's failure to object to Ross and Velaga's lay testimony did not amount to ineffective assistance of counsel. As discussed, no error occurred when the court allowed Velaga's testimony regarding the scale found in defendant's possession and the lack of use paraphernalia, or Ross's testimony regarding the preservation of evidence to test for fingerprints and DNA. The testimony was properly admitted under MRE 701. Defense counsel need not make fruitless or meritless objections. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Further, even if defense counsel was ineffective for failing to object to the challenged testimony, defendant has failed to demonstrate that but for counsel's failure to object, there is a reasonable probability that the outcome of trial would have been different. Again, the prosecution presented significant additional evidence that defendant possessed the heroin with the intent to deliver. Velaga testified that he found the heroin in defendant's pocket, and that defendant admitted the scale found in the car was his. Thus, testimony about why the items seized during the search had not been tested for fingerprints or DNA would not likely have affected the jury's decision. In addition, Ross provided expert testimony that the amount of heroin defendant had in his pocket, in combination with the scale found in defendant's possession and the lack of use paraphernalia, indicated that defendant possessed the heroin for sale rather than for use. We conclude that defendant has failed to show that his trial counsel was ineffective.

## IV. DUE DILIGENCE

Finally, defendant argues that the court abused its discretion by ruling that the prosecution exercised due diligence to locate Daniella Moore, the passenger in the vehicle defendant was driving, to testify at trial. We disagree.

"We review a trial court's determination of due diligence and the appropriateness of a 'missing witness' instruction for an abuse of discretion." *People v Eccles*, 260 Mich App 379, 389; 677 NW2d 76 (2004), citing *People v Bean*, 457 Mich 677, 684; 580 NW2d 390 (1998).

"An abuse of discretion occurs when the trial court's decision is outside the range of principled outcomes." *People v Duenaz*, 306 Mich App 85, 90; 854 NW2d 531 (2014), citing *People v Benton*, 294 Mich App 191, 195; 817 NW2d 599 (2011).[4]

Pursuant to MCL 767.40a(1), the prosecutor must provide a list of all known witnesses he or she may call at trial, and all known res gestae witnesses. MCL 767.40a(1); *Duenaz*, 306 Mich App at 103. "Once a witness is endorsed under MCL 767.40a(3),[5] the prosecution must use due diligence to produce the witness." *Duenaz*, 306 Mich App at 104 (footnote added), citing *Eccles*, 260 Mich App at 388. "The test is one of reasonableness and depends on the facts and circumstances of each case, i.e., whether diligent good-faith efforts were made to procure the testimony, not whether more stringent efforts would have produced it." *Bean*, 457 Mich at 684. If the trial court determines that the prosecutor failed to exercise due diligence to produce an endorsed witness, "the jury should be instructed that it may infer that the missing witness's testimony would have been unfavorable to the prosecution's case." *Eccles*, 260 Mich App at 388-389, citing CJI2d 5.12.

Although the trial court did not hold a separate due diligence hearing, the prosecution at trial listed the efforts made to locate Moore. The record supports the trial court's finding that the efforts made were reasonable. According to the prosecutor, after she informed defense counsel that she no longer intended to call Moore to testify at trial, he said he may or may not want to call Moore himself, but had not yet decided. In response, she asked Velaga to assist in finding Moore. Velaga then went to Moore's last known address twice. He spoke with Moore's sister and mother, neither of whom could provide a good address or phone number for her. Another officer also went to the address, but failed to locate Moore. Additionally, Velaga unsuccessfully searched for Moore in the police internal database, and in the county jail.

Defendant compares the efforts made to locate Moore to those determined to be tardy and insufficient in *Bean*, *People v Dye*, 431 Mich 58; 427 NW2d 501 (1988), and *People v James* (*After Remand*), 192 Mich App 568; 481 NW2d 715 (1992), but those cases are distinguishable. In each, the prosecutor attempted to introduce preliminary examination testimony of the missing witnesses at trial, to aid in their case in chief. *Bean*, 457 Mich at 680; *Dye*, 431 Mich at 61;

---

[4] Defendant also argues that the court violated his Confrontation Clause rights, but abandoned this claim by making no meaningful argument in support. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims . . . ." *People v Payne*, 285 Mich App 181, 195; 774 NW2d 714 (2009) (quotation marks and citation omitted). Confrontation Clause claims are often made when the prosecution requests the admission of a witness's preliminary examination testimony, because that witness is missing at the time of trial. See *Bean*, 457 Mich at 680-682. Moore did not testify at the preliminary examination, and the prosecution did not seek the admission of any prior testimony or statements of Moore.

[5] MCL 767.40a(3) provides: "Not less than 30 days before the trial, the prosecuting attorney shall send to the defendant or his or her attorney a list of the witnesses the prosecuting attorney intends to produce at trial."

*James* (*After Remand*), 192 Mich App at 571-573. Reviewing courts properly considered this fact as among the facts and circumstances of the case that informed the decisions in those cases. See *Bean*, 457 Mich at 684.

Here, the prosecution did not seek to introduce the prior testimony of Moore, and the prosecutor promptly notified defense counsel when she decided not to call Moore as a witness at trial. The prosecution is permitted to delete witnesses from the list of witnesses it wishes to call at trial, upon the stipulation of the parties. MCL 767.40a(4).[6] Upon notification, defense counsel told the prosecution that he had not yet decided if he wanted to call Moore to testify on defendant's behalf. The prosecution then began efforts to locate Moore. Thus, in contrast to *Dye*, *James* (*After Remand*), and *Bean*, the alleged tardiness of the prosecutor's efforts cannot be considered unreasonable in this case, as they began immediately upon the prosecution's being informed that the defense may wish to call Moore. Had the defense not intended to call Moore and agreed to her deletion from the list of witnesses the prosecution intended to call at trial, there would have been no need to locate her. Because the prosecution exercised due diligence in attempting to locate Moore, defendant was not entitled to a missing witness instruction.

Regardless, even if the prosecutor failed to exercise due diligence to locate Moore, defendant fails to establish that he suffered any prejudice as a result. In his brief, defendant makes the conclusory statement that had the court given the missing witness instruction, the outcome of trial would have been different, but in support of his argument then cites to facts that having nothing to do with this case.[7] Again, "[a]n appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims . . . ." *People v Payne*, 285 Mich App 181, 195; 774 NW2d 714 (2009) (quotation marks and citation omitted).

Affirmed.

/s/ Mark T. Boonstra
/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly

---

[6] It is not clear from the record whether defense counsel actually did stipulate to the removal of Moore from the list. Nonetheless, the prosecution acted in good faith by promptly notifying defense counsel of its desire to remove her, which triggered the request that she be located.

[7] Defendant states, "Given the uncertain evidence of regarding whether the decedent was armed and began the shootout and the history of threatening and intimidating the defense in this matter, the jury may well have found a reasonable doubt had they inferred that the testimony of the missing witnesses would have been adverse to the prosecution's theory."