*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CHARLES ROGER BROOKS,

        Defendant-Appellant.

UNPUBLISHED
February 12, 2019

No. 338267
Wayne Circuit Court
LC No. 16-002674-01-FC

Before: MURRAY, C.J., and STEPHENS and RIORDAN, JJ.

PER CURIAM.

A jury convicted defendant of armed robbery, MCL 750.529, two counts of assault with intent to do great bodily harm less than murder, MCL 750.84, carrying a weapon with unlawful intent, MCL 750.226, felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony (second offense), MCL 750.227b. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to concurrent prison terms of 25 to 30 years for the armed robbery conviction, 10 to 20 years for each assault conviction, and 5 to 10 years each for the carrying a weapon with unlawful intent and felon-in-possession convictions, to be served consecutive to a five-year term of imprisonment for the felony-firearm conviction. Defendant appeals as of right. We affirm.

## I. FACTS

Defendant's convictions arise from his involvement in a foiled robbery of a pizza delivery person, on Kentucky Street in Detroit on December 9, 2015. When the delivery person arrived to deliver an order, a man on the front porch, identified as codefendant Devante Fleming, waved his hand and signaled to her. As she approached the porch, defendant emerged from the side of the house. Defendant was armed with a gun that was equipped with a laser pointer, and he aimed it at her. The pizza store manager had accompanied the delivery person on the run and was waiting in a car parked along the street. The manager had a concealed pistol license, produced a gun and instructed defendant to drop his weapon. When defendant pointed his weapon toward the manager, the manager fired his gun toward defendant. The defendant responded by firing back. Both defendant and the pizza delivery person were wounded during

the exchange of gunfire. The pizza delivery person received her wound in a buttock. The manager claimed that a jacket he was wearing also sustained gunshot damage, but he was able to call 911 and drove the delivery person to a hospital. The police then located defendant on the ground near a pool of blood approximately a block away from the shooting.

Shell casings recovered from the scene indicated that two different guns were involved in the shooting, one of which was positively identified as the manager's gun. The prosecution also introduced evidence that defendant had made telephone calls from the same telephone number that was used to place the pizza order, and that defendant was associated with an address where the codefendant resided.

Defendant and codefendant were tried jointly, before one jury. Against the advice of counsel, defendant testified at trial and denied ordering a pizza, knowing codefendant Fleming, or possessing a gun. He claimed that he was selling marijuana from the house on Kentucky Street and thought the delivery person was a customer. He said that he only had a flashlight, which he pointed toward her, and then at the manager, after which he heard gunfire coming from the manager's car. The jury convicted defendant as charged, but acquitted Fleming of all charges.

## II. JURY SELECTION

Defendant argues that errors requiring reversal occurred during jury selection. We disagree.

### A. PRESERVATION & STANDARD OF REVIEW

Generally, "[f]or an issue to be preserved for appellate review, it must be raised, addressed, and decided by the lower court." *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). With respect to the specific issue raised here, "the defendant must exhaust his peremptory challenges to preserve a jury selection question." *People v Jendrzejewski*, 455 Mich 495, 514-515 n 19; 566 NW2d 530 (1997). Given defendant's failure to use all of his peremptory strikes, or object to his alleged inability to do so, this issue is not preserved. See *id.*; see also *Metamora Water Serv*, 276 Mich App at 382. The right to a peremptory challenge in Michigan is of non-constitutional dimension and, therefore, an unpreserved violation of the right is reviewed for plain error affecting substantial rights. *People v Bell*, 473 Mich 275, 294; 702 NW2d 128 (2005), amended 474 Mich 1201 (2005). The plain-error test has four elements:

> 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) . . . the plain error affected substantial rights . . . [, and 4) ] once a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence. [*People v Randolph*, 502 Mich 1, 10; 917 NW2d 249 (2018), quoting *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999) (alterations and ellipses in *Randolph*).]

"A 'clear or obvious' error under the second prong is one that is not subject to reasonable dispute." *Randolph*, 502 Mich at 10. The third element "generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Carines*, 460 Mich at 763. "It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice." *Id*. (quotation marks and citation omitted).

## B. LAW & ANALYSIS

Because defendant and codefendant each were charged with life offenses, each had 10 peremptory challenges.[1] Fourteen prospective jurors were initially selected from the venire. Following voir dire, the court dismissed one juror for cause, defendant successfully challenged one juror for cause, and the prosecutor and codefendant Fleming passed for cause. The prosecutor passed on peremptory challenges, Fleming exercised one peremptory challenge, and defendant exercised five peremptory challenges. After eight new jurors were called, and after further voir dire, all parties passed for cause, the prosecutor exercised one peremptory challenge, Fleming exercised three peremptory challenges, and defendant passed on peremptory challenges. After four new jurors were seated, and after additional voir dire, Fleming challenged one juror for cause, the prosecutor and defendant passed for cause and passed on peremptory challenges, and Fleming exercised one peremptory challenge. Two new jurors were seated, and then the jurors were excused for a break.

During a break, the trial court apparently observed that defense counsel and defendant were engaged in an argument. Defense counsel told the court, outside the presence of the jury, that defendant had become combative with her because she told him that he could not peremptorily dismiss jurors simply because of their race. At that point, defendant had already peremptorily dismissed five jurors, all of whom were white. He then wanted to peremptorily dismiss jurors 11 and 13, both of whom were also white, but he did not have a race-neutral reason for doing so. The court explained to defendant that a party could not excuse jurors because of their race, and encouraged defendant to work with defense counsel in choosing which jurors to challenge. Thereafter, defendant denied that he wanted to excuse the jurors because of their race, but when asked by the court, he said he could not remember why he wanted to peremptorily dismiss jurors 11 and 13. The court denied the peremptory challenges to dismiss jurors 11 and 13 and informed defendant that he could not dismiss the jurors without providing a race-neutral reason for wanting to excuse them. After further voir dire of newly seated jurors, all of the parties passed for cause and passed on additional peremptory challenges. According to defense counsel, defendant said that he was "fine" with the jury as seated.

---

[1] Once a prospective jury has been seated and one or more peremptory challenges are exercised, "another juror or other jurors must be selected and examined. Such jurors are subject to challenge as are previously seated jurors." MCR 2.511(G).

Defendant now argues that his defense counsel violated the dictates of *Batson*[2] which resulted in a violation of his right to a fair trial and his right to exercise peremptory challenges. We disagree.

In *Batson v Kentucky*, 476 US 79; 106 S Ct 1712; 90 L Ed 2d 69 (1986), the United States Supreme Court held that the Equal Protection Clause prohibits the use of peremptory challenges to exclude members of a jury venire because of their race. The Court set forth a three-step process for determining whether a challenger has improperly exercised peremptory challenges. First, the opponent of the challenge must make a prima facie showing of discrimination based on race. *Id*. at 94-97. Next, once the prima facie showing is made, the burden then shifts to the challenging party to come forward with a neutral explanation for the challenge. *Id*. at 97. Finally, the trial court must decide whether the opponent of the challenge has proven purposeful discrimination. *Id*. at 100.

As the trial court observed, defendant had engaged in a pattern of using peremptory challenges to dismiss only white jurors, having exercised all five of his previous peremptory challenges to dismiss white jurors. The trial court did not clearly err by finding that this pattern of using peremptory challenges to excuse only white jurors established a prima facie case of discrimination. *Id*. at 96-97. Therefore, the trial court properly called on defendant to provide race-neutral explanations for wanting to dismiss jurors 11 and 13, who were also white. Although defendant denied that he wanted to excuse jurors 11 and 13 because they were white and claimed that he wanted to dismiss them because of something they said, he was unable to recall what it was that they said that made him want to excuse them. Because defendant was unable to provide a race-neutral explanation, the trial court's denial of the peremptory challenges was proper.

Defendant's argument that the trial court improperly prohibited him from exercising any of his remaining peremptory challenges is not supported by the record. The trial court did not inform defendant that he was precluded from exercising *any* more peremptory challenges. It merely informed him that he could not excuse jurors 11 and 13 without providing a race-neutral explanation for doing so. After the court denied the peremptory challenges to jurors 11 and 13, defense counsel continued to conduct voir dire with respect to newly seated jurors and counsel was offered the opportunity to exercise additional peremptory challenges, but declined to do so. Accordingly, we reject this claim of error.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that he is entitled to a new trial due to his constitutionally deficient trial counsel. We disagree.

---

[2] *Batson v Kentucky*, 476 US 79; 106 S Ct 1712; 90 L Ed 2d 69 (1986).

## A. STANDARD OF REVIEW & GENERAL LAW

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). "A judge first must find the facts, and then must decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel." *Id*. This Court reviews for clear error the trial court's factual findings and reviews de novo questions of law. *People v Lane*, 308 Mich App 38, 67-68; 862 NW2d 446 (2014).

To prevail on a claim of ineffective assistance of counsel, a defendant bears a heavy burden to establish that (1) counsel's performance was deficient, meaning that it fell below an objective standard of reasonableness, and (2) but for counsel's error, there is a reasonable probability that the outcome of the defendant's trial would have been different. *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001), citing *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Swain*, 288 Mich App 609, 643; 794 NW2d 92 (2010). Counsel's performance should be evaluated at the time of the alleged error without the benefit of hindsight. *People v Grant*, 470 Mich 477, 487; 684 NW2d 686 (2004). A defendant must overcome a strong presumption that counsel's actions constituted sound trial strategy. *Carbin*, 463 Mich at 600. "The defendant 'bears the burden of demonstrating both deficient performance and prejudice[;] the defendant [also] necessarily bears the burden of establishing the factual predicate for his claim.' " *People v Cooper*, 309 Mich App 74, 80; 867 NW2d 452 (2015), quoting *Carbin*, 463 Mich at 600 (alteration in *Cooper*).

## B. ANALYSIS

The record does not support defendant's contentions that defense counsel was ineffective by relying exclusively on defendant to choose a jury, that counsel performed deficiently by responding to the court's inquiry during jury selection, or that counsel's responses to the *Batson* issue prevented defendant from being able to exercise any of his remaining peremptory challenges. On the contrary, the record shows that defense counsel was actively involved in jury voir dire and consulted with defendant regarding which jurors to peremptorily dismiss. Counsel responded to the trial court's inquiry by explaining that she was trying to *avoid* a *Batson* challenge. Although defendant contends he did not understand the meaning of "race neutral," the court's comments during trial fully informed defendant that he could not peremptorily dismiss a juror because the juror is white; rather, defendant needed to provide a race-neutral reason for dismissing a juror. Defendant did not express any confusion about the meaning of "race neutral" and he denied wanting to dismiss jurors 11 and 13 because they were white. However, he was unable to provide any reason for wanting to dismiss the jurors, other than explaining that it was because of something they said, even though he could not recall what they said. Further, the trial court did not prevent defendant from exercising additional peremptory challenges. It only informed him that he could not peremptorily dismiss jurors without a race-neutral reason. Thereafter, defense counsel continued to participate in the voir dire of replacement jurors and defendant was offered the opportunity to exercise additional peremptory challenges, but passed on doing so. There is nothing in the record to support defendant's factual allegation that the trial court precluded him from exercising peremptory challenges. Thus, defendant has failed to establish the factual predicate for his claim. *Cooper*, 309 Mich App at 80.

To the extent that defendant may be suggesting that his jury was not impartial, he has not provided any factual support for this conclusion. He also has not identified any reason that a seated juror should have been dismissed peremptorily, and he does not allege any prejudice as a result of defense counsel's conduct of voir dire. Defendant has failed to carry his burden to prove that counsel's performance during jury selection was deficient and that he suffered prejudice therefrom. See *Carbin*, 463 Mich at 600.

Defendant also contends that defense counsel was ineffective for failing to move for separate juries. Before trial, defendant and codefendant Fleming both objected to the prosecutor's request to consolidate the two cases for trial. The court denied the requests, after which defendant and codefendant Fleming both agreed there was no need for separate juries. Defendant does not cite any authority in support of his contention that separate juries should have been empaneled. "Severance is mandated under MCR 6.121(C) only when a defendant provides the court with a supporting affidavit, or makes an offer of proof, that clearly, affirmatively, and fully demonstrates that his substantial rights will be prejudiced and that severance is the necessary means of rectifying the potential prejudice." *People v Hana*, 447 Mich 325, 346; 524 NW2d 682 (1994), amended 447 Mich 1203 (1994). The use of separate juries is a partial form of severance, which is evaluated under the same standards as a motion for separate trials. *Id*. To warrant severance, the defenses must be mutually exclusive or irreconcilable. *Id*. at 349. Incidental spillover prejudice is generally inevitable and insufficient to warrant severance. *Id*. Rather, the tension between the defenses must cause a jury to believe one defendant at the expense of another. *Id*.

Defendant and codefendant Fleming did not present mutually exclusive or irreconcilable defenses at trial, and there is no indication that the jury was exposed to evidence that was admissible against one defendant, but not admissible against the other. Although defendant asserts that he was prejudiced because the prosecution introduced evidence that he and Fleming knew each other, defendant does not explain why such evidence would not have been admissible before a separate jury. In sum, defendant has not demonstrated that a separate jury was necessary to protect his right to a fair trial. Accordingly, any motion for a separate trial or jury would have been futile. See *id*. at 349, 351-352. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Defendant next argues that defense counsel was ineffective by failing to request an adjournment after the trial court granted the prosecution's motion to reinstate an armed robbery charge that had been dismissed at the preliminary examination. Although defendant argues that defense counsel should have requested an adjournment in order to be able to defend the added charge, there is no indication in the record that counsel was unprepared to defend against the allegation. Indeed, counsel testified at a *Ginther*[3] hearing that she had no reason to request an adjournment when the charge was reinstated because "it would not have made a difference" in her strategy. As there is no basis for concluding that defense counsel was unprepared to defend

---

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

against the added robbery charge, and defense counsel conceded that the added charge did not affect her trial strategy, defendant has failed to bear his burden of proving his claim of ineffective assistance of counsel for failing to seek an adjournment. See *Carbin*, 463 Mich at 600.

Defendant argues that defense counsel also was ineffective for allowing him to testify without adequate preparation and guidance, and without adequately preparing him for cross-examination. The record does not support his contention. Defense counsel testified at the *Ginther* hearing that she advised defendant not to testify because his demeanor and his attitude would not make him a good witness. Before testifying at trial, defendant advised the court that he and defense counsel had discussed the matter and he was satisfied with defense counsel's advice regarding whether to testify. Defendant also does not explain how any different preparation would have altered his trial testimony. In sum, defendant fails to establish the factual predicate for his claim that defense counsel did not adequately prepare him for his trial testimony. *Id.*; *Cooper*, 309 Mich App at 80.

Defendant next argues that defense counsel was ineffective by failing to object to the prosecutor's closing argument that the defense was "victim blaming" in response to the defense closing that the action of the male manager to allow the female delivery person to approach the house with the pizza was an example of chivalry being "dead."

Prosecutorial statements must be evaluated in context to defense counsel's arguments. *People v Brown*, 279 Mich App 116, 135; 755 NW2d 664 (2008). Statements made by the prosecutor may not "require reversal if they respond to issues raised by the defense." *People v Callon*, 256 Mich App 312, 330; 662 NW2d 501 (2003). The prosecutor's comment during rebuttal argument was clearly made in response to defense counsel's closing argument. When reviewed in context and in conjunction with defense counsel's closing argument, the prosecutor's comment did not rise to the level of prosecutorial misconduct. Thus, defense counsel was not ineffective by failing to make a futile objection. *Ericksen*, 288 Mich App at 201.

Lastly, defendant contends that defense counsel was ineffective for failing to introduce telephone records to show that the telephone used to order the pizza did not belong to defendant. He fails to explain how the telephone records would have been exculpatory. The prosecution did not claim that defendant owned the telephone, but introduced evidence that he had previously made calls from a telephone with the same number that was used to place the pizza order. Defense counsel testified at the *Ginther* hearing that she did not introduce telephone records because the mother of defendant's child testified that defendant had called her from that number on at least two occasions. As such, defendant has failed to show that defense counsel's decision not to introduce the records was objectively unreasonable, or that the result of the proceeding would probably have been different had the phone records been introduced. See *Carbin*, 463 Mich at 600.

## IV. CONCLUSION

Affirmed.

/s/ Christopher M. Murray
/s/ Cynthia Diane Stephens
/s/ Michael J. Riordan